This petition for writ of mandamus requires us to decide whether claims by Perry L. Roberson against MS Life Insurance Company ("MS Life") are subject to arbitration. Roberson contends that the trial court improperly reconsidered its earlier denial of MS Life's motion to compel arbitration. We agree.
Roberson purchased an automobile from Bay Chevrolet, Inc., in Mobile, Alabama. On May 16, 1996, Roberson sued Bay Chevrolet; MS Life; and Allen Adams, a salesman employed by Bay Chevrolet, in Mobile County Circuit Court. Roberson alleged that Adams, while acting in the line and scope of his authority as an agent for Bay Chevrolet and MS Life, misrepresented to him that he had to purchase credit life insurance and credit disability insurance in order to qualify for financing. Roberson averred that, in reliance on Adams's representations, he bought the insurance. Roberson's complaint states claims for fraud and for negligent supervision of Adams by Bay Chevrolet and MS Life as his principals.
One of the several documents Roberson signed when he purchased the car was an "Arbitration Agreement." On July 3, 1996, Bay Chevrolet and Adams filed a motion to compel arbitration based on the "Arbitration Agreement" signed by Roberson and by Allen Adams as agent for Bay Chevrolet. On July 16, 1996, MS Life joined in that motion. MS Life claimed that, because the credit life policy and disability insurance sold to Roberson were products of Roberson's contract with Bay Chevrolet, MS Life was entitled to compel Roberson to arbitrate his claims against it.
On August 23, 1996, the trial court issued an order compelling Roberson to arbitrate his claims against the defendants. On September 24, 1996, Roberson filed a motion to reconsider the trial court's order granting the motion to compel arbitration as to MS Life only. He did not challenge the trial court's order compelling arbitration of his claims against Bay Chevrolet and Adams.
On October 30, 1996, the trial court granted Roberson's motion to reconsider and denied MS Life's motion to compel arbitration. The trial judge's notation on the case action summary reads: "Motion to reconsider granted. Order compelling arbitration is set aside and motion for arbitration is denied." This entry on the case action summary is not signed or initialed by the trial judge. MS Life did not appeal this order.
Discovery proceeded thereafter. The trial judge, the Honorable Robert L. Byrd, who was originally assigned this case, retired effective January 2, 1997. Judge Joseph S. Johnston was assigned the case after Judge Byrd's retirement.
On June 17, 1998, over a year and a half after the motion to compel arbitration was denied, MS Life filed a motion to reconsider the order denying the motion to compel arbitration and a motion to stay proceedings with the trial court. According to the *Page 443 
order of July 1, 1998, Judge Johnston granted MS Life's motion to reconsider on the authority of "Ex parte Isbell, 1997 WL 531100 at *4" (a reference to this Court's opinion of March 7, 1997, in case no. 1951384) and stayed the action pending the arbitration. On July 10, 1998, Roberson filed a motion for the trial court to vacate its order of July 1 for the reason that MS Life's only valid method of relief from the October 30, 1996 order would have been postjudgment motion, appeal, or both, but only within the time limits applicable to all orders or judgments which are appealable as a matter of right. On September 16, 1998, after a hearing, the trial court denied Roberson's motion. Roberson thereafter filed this petition for writ of mandamus, which is the proper method to test the trial court's grant of a motion to compel arbitration. Ex parte Jones, 686 So.2d 1166 (Ala. 1996);Ex parte Alexander, 558 So.2d 364 (Ala. 1990).
On two grounds Roberson challenges the order of the trial court denying his motion to vacate the July 1, 1998 order compelling arbitration of his claims against MS Life Insurance Company. The first ground is that MS Life missed the deadlines for postjudgment motion and appeal applicable to an order denying a motion to compel arbitration and thereby waived its rights to review of the denial. The second ground of Roberson's petition for writ of mandamus is that MS Life is not a party to the "Retail Sales Contract" or the "Arbitration Agreement" and the contract between Roberson and MS Life does not contain an arbitration clause.
We will address Roberson's second ground first. Absent an ambiguity in the contract language, the answer to a single question determines whether MS Life was ever entitled to compel arbitration in this case: Did MS Life and Roberson intend and agree to submit the dispute to arbitration? See, A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 361 (Ala. 1990). MS Life argues that the only issue properly before this Court is whether the trial court had jurisdiction to reverse its previous order denying MS Life's motion to compel arbitration, because, MS Life further argues, Roberson did not address the underlying substantive issues in his motion to vacate. We find these arguments without merit inasmuch as the issue of arbitrability was comprehensively presented to the trial court in Roberson's motion to reconsider and accompanying brief filed September 24, 1996.
Roberson signed a "Retail Buyer's Order" and an "Arbitration Agreement." Those documents were also signed by Allen Adams as Bay Chevrolet's agent. The "Arbitration Agreement" reads as follows:
"ARBITRATION AGREEMENT
 "Buyer/lessee acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce.
 "Buyer/lessee and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. § 1 et seq. and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing, and its condition, including *Page 444 
disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing, and representations, promises, omissions made in connection with negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle.
 "Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The buyer/lessee and the dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where the dealer's facility is located.
 " 92 Chevrolet Lumina
" Vehicle Description "2G1WP14X1N9240229
"Vehicle Identification Number "/s/ Allen R. Adams
"Seller(s)/Lessor(s) "/s/ Perry L. Roberson
"Buyer(s)/Lessor(s) "1/10/96
"Date"
(Emphasis added.)
That section of the "Retail Buyer's Order" which MS Life claims provides for arbitration reads as follows:
 "Purchaser and Seller agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale of the vehicle, terms and provisions of the sale, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale shall be settled by binding arbitration, conducted pursuant to the provisions of 9 U.S.C. § 1 et seq., and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the Purchaser and the Seller to resolve by binding arbitration all disputes between them
concerning the vehicle, its sale and its condition, including disputes concerning the terms and conditions of the sale, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, any representation, promises or omissions made in connection with negotiations for the sale of the vehicle, or any terms, conditions or representations made in connection with the financing, credit life insurance, disability insurance, and vehicle service contract purchased or obtained in connection with the vehicle."
(Emphasis added.)
Although the "Arbitration Agreement" and "Retail Buyer's Order" reference financing, credit life insurance, and disability insurance, the documents specifically provide that they govern disputes between the "Seller/Lessor," "Dealer," or "Seller" and the "Buyer/Lessee" or "Purchaser" with regard to those issues. Adams signed Bay Chevrolet's documents as an agent of the seller/lessor. Only one document is signed by Roberson and by Adams as agent for MS Life. That document is entitled the "Application for Insurance" dated January 10, 1996. There is no arbitration clause in the "Application" nor in the "Certificate of Insurance." The "Certificate of Insurance" defines the contract of insurance as follows:
 "(1) the APPLICATION FOR INSURANCE of DEBTOR which includes, but *Page 445 
is not limited to, the SCHEDULE, the HEALTH STATEMENT, and the CERTIFICATE OF INSURANCE; (2) the application of CREDITOR for the Creditor Group Life and Disability Insurance Policy; and (3) the Creditor Life and Disability Insurance Policy issued to CREDITOR effective as of the DATE OF THE LOAN."
Agreement to Arbitrate
The history of the Federal Arbitration Act reveals that it "was designed to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law." Mitsubitshi Motors Corp. v. SolerChrysler-Plymouth, Inc., 473 U.S. 614, 625 n. 14 (1985). "There is no federal policy favoring arbitration under a certain set of procedure rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Volt Information Sciences, Inc. v. Board of Trusteesof Leland Stanford Junior University, 489 U.S. 468, 476 (1989). See also A.G. Edwards Sons, Inc. v. Clark, supra, at 362 (Ala. 1990) (arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute he has not agreed to submit).
"The court is to make this determination by applying the `federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'"Mitsubitshi Motors Corp. v. Soler Chrysler-Plymouth, Inc., supra,473 U.S. at 626. (Citations omitted.) See also Ex parte Lorance,669 So.2d 890 (Ala. 1995). Federal substantive law provides that the question of whether the parties agreed to arbitrate their dispute is to be governed by ordinary state law principles relating to the formation of contracts. First Options of Chicagov. Kaplan, 514 U.S. 938, 944 (1995). "The question whether an arbitration clause applies to a claim is a matter of state-law contract interpretation, which `is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause.'" Coastal Ford,Inc. v. Kidder, 694 So.2d 1285, 1288 (Ala. 1997). (Citation omitted.) "While recognizing the federal policy favoring enforcement of arbitration agreements, courts have refused to `stretch' arbitration agreements to apply to matters clearly not contemplated by the parties at the time of contracting. Even a broad arbitration clause is not limitless." A.G. Edwards Sons,Inc. v. Clark, supra, at 362. (Citations omitted.)
Thus, the first task of a court is to "determine whether there was a valid enforceable arbitration agreement that applied to the dispute," Ex parte McKinney, 515 So.2d 693, 694 (Ala. 1987), which depends on whether the parties intended that the particular dispute be covered by the arbitration clause. See, RyanWarranty Services, Inc. v. Welch, 694 So.2d 1271 (Ala. 1997). "`If there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" Allstar Homes, Inc. v. Waters, 711 So.2d 924, 929
(Ala. 1997). (Citations omitted.) "`A [trial] court's duty in determining whether the making or the performance of an agreement to arbitrate is in issue is analogous to its duty in ruling on a motion for summary judgment.'" Id. at 930; Allied-Bruce TerminixCompanies, Inc. v. Dobson, 684 So.2d 102, 108 (Ala. 1995).
 Standard of Review
Historical development of the law in Alabama governing appellate review of trial court determinations of arbitrability has resulted in different methods of review, depending on whether a motion to compel arbitration is granted or denied. *Page 446 
If the trial court denies a motion to compel arbitration, the dissatisfied party may obtain review by appeal. A.G. Edwards Sons, Inc. v.Clark, 558 So.2d 358 (Ala. 1990). "This Court's review of a trial court's refusal to compel arbitration is de novo." PatrickHome Center v. Karr, 730 So.2d 1171, 1172 (Ala. 1999). See also,Jim Burke Automotive, Inc. v. Murphy, 739 So.2d 1084 (Ala. 1999);Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.,745 So.2d 2701 (Ala. 1999). If, however, the trial court grants a motion to compel arbitration, a petition for writ of mandamus is the proper means to test the trial court's order. Exparte Jones, supra.; Ex parte Alexander,supra. For this particular species of mandamus, the petitioner, to prevail, should not be required to demonstrate an abuse of discretion by the trial judge. In order to avoid violations of the Due Process Clauses of both the United States Constitution and the Alabama Constitution of 1901, the Equal Protection Clause of the United States Constitution, and the provisions of the Alabama Constitution in effect guaranteeing equal protection, a single standard of appellate review of a trial court's determination of arbitrability should prevail. A double standard would violate the provisions of both constitutions. Because the sole question is that of arbitrability, the standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo
determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review. Of course, findings by the trial court on any factual issues properly for determination by the trial court would be accorded such presumptions of correctness as ordinarily attend the particular kind or kinds of fact findings. See, e.g., Ex parteWarrior Basin Gas Co., 512 So.2d 1364, 1368 (Ala. 1987); Smith v.Citicorp Person-to-Person Financial Centers, Inc., 477 So.2d 308,309 (Ala. 1985).
The language in the documents evidencing the parties' agreement in this case is not ambiguous. While there is an agreement to arbitrate between Roberson and Bay Chevrolet, there is no agreement to arbitrate between MS Life and Roberson.
The trial court granted MS Life's motion on the authority of this Court's March 7, 1997, opinion in a case styled Ex parteIsbell. That opinion, however, was withdrawn and another opinion substituted on August 29, 1997, Ex parte Isbell, 708 So.2d 571
(Ala. 1997). The substituted opinion affected that portion of the first released Isbell opinion upon which the trial court had relied in holding that MS Life could compel arbitration of the claims against it. We hold that the trial court erred in granting MS Life's motion to arbitrate. MS Life has no standing to compel arbitration because there is no agreement to arbitrate between MS Life and Roberson.
Appealability of October 30, 1996 Order
The second cardinal issue before this Court is whether, on the one hand, MS Life's June 17, 1998 motion to reconsider the trial judge's October 30, 1996 order reconsidering and denying the motion to compel arbitration empowered the trial court to reconsider the motion a second time and to grant it or whether, on the other hand, MS Life lost its right to both a second reconsideration and an appeal by failing to file a motion to reconsider the October 30, 1996 order within 30 days after that date or a notice of appeal within 42 days after that date. See,A.G. Edwards Sons, supra. MS Life contends that an order denying arbitration is nonfinal absent the losing party's desire to appeal the denial. Thus, argues MS Life, the trial court had the authority, even at that late date, to reconsider the motion to compel arbitration a second time and to grant it. A.G. Edwards Sons, supra, holds, however, "that the 42-day time limit [imposed by Rule 4, Ala.R.App.P.] for an appeal is applicable to appeals from an order denying a motion to compel arbitration under9 U.S.C. § 15." 558 So.2d at 361. *Page 447 
A case with an analogous procedural history is McCormack v.AmSouth Bank, N.A., [Ms. 1971025, March 12, 1999] ___ So.2d ___ (Ala. 1999), involving an order denying class certification, interlocutory, yet "final" for purposes of appeal. McCormack sued AmSouth Bank, seeking damages based on claims relating to alleged mismanagement by AmSouth of trust affairs. Summary judgment was entered in favor of AmSouth. McCormack appealed. One of the issues on appeal was whether the trial court erred in denying class certification. AmSouth argued any appeal of that issue was untimely because the order denying class certification was a "final" order and McCormack did not file a notice of appeal from that order within 42 days allowed for an appeal from a final judgment. This Court concluded that McCormack's failure to appeal the order denying class certification within the period of time allowed for an appeal divested the appellate court of jurisdiction to consider whether the trial court erred in denying certification:
 "[A]n order denying class certification does not fit neatly within the categories of `interlocutory' and `final' orders, but this Court's determination as to the nature of such an order is clear. It is a `final' order and may be appealed, as this Court held in Butler [v. Audio/Video Affiliates, Inc., 611 So.2d 330 (Ala. 1992)]. The failure to file an appeal within the period allowed divests an appellate court of jurisdiction to consider the issue that is the subject of the untimely appeal."
McCormack v. AmSouth Bank, N.A., ___ So.2d at ___. (Citation omitted.)
While the denial of a motion to compel arbitration similarly may not fit neatly within the categories of "interlocutory" and "final" orders, this Court has held, as we have already observed, that such an order is appealable, but only within the 42-day time limit. In this case, the motion to compel arbitration was originally granted and then, on October 30, 1996, pursuant to Roberson's motion to reconsider, was denied. That ruling constituted a denial of a motion of compel arbitration.
In Merrill Lynch, Pierce, Fenner Smith, Inc. v. Cobb,717 So.2d 355 (Ala. 1998), this Court dismissed an appeal from the trial court's second denial of a Rule 59(e) motion to alter, to amend, or to vacate the trial court's denial of the defendants' motion to compel arbitration. The trial court had set aside its first denial and then had reentered a denial as an accommodation to save the appellant's right to appeal. The Merrill Lynch Court held that the 42-day period for appeal runs from the date a motion to compel arbitration is denied; that a motion to alter, to amend, or to vacate the denial pursuant to Rule 59(e), Ala.R.Civ.P., suspends the running of the 42-day period pending the trial court's ruling on that motion (see Rule 4(a)(3), Ala.R.App.P.;Alabama Farm Bureau Mut. Cas. Ins. Co. v. Boswell,430 So.2d 426, 428 (Ala. 1983)); but that the Merrill Lynch appellants had only 42 days following the first denial of their Rule 59(e) motion in which to appeal:
 "It was the defendants' duty to stay abreast of any action taken in this case, and they had 42 days in which to appeal to this Court. They did not appeal within that period. This appeal is, therefore, dismissed."
717 So.2d at 356-57.
The Merrill Lynch language that "the running of the 42-day appeal period was suspended pending the trial court's ruling" (717 So.2d at 356, emphasis added) on the Rule 59(e) motion is significant. Obviously the 42 days had begun running upon the denial of the motion to compel arbitration. The right to appeal did not wait in limbo until the proponent of arbitration filed the Rule 59(e) motion or otherwise conceived a desire for review, as MS Life would have us hold in the case before us. The 42 days allowed for MS Life to appeal the October 30, 1996 denial of the motion to compel arbitration had long expired by the time *Page 448 
MS Life filed its June 17, 1998 motion to reconsider.
In a 1998 decision, Ex parte Mutual Savings Life InsuranceCo., [Ms. 1970424, May 22, 1998] ___ So.2d ___ (Ala. 1998), this Court holds that an appealable order entered by a trial court is a "judgment." Justice Houston, writing for the Court, held that Mutual Savings could appeal the grant of a new trial and stated that "Rule 54(a) . . . defines a `judgment' as including `a decree and any order from which an appeal lies.'" ___ So.2d at ___. In Mutual Savings, the Court holds that, because § 12-22-10, Ala. Code 1975, provides for the right to appeal from a circuit court's order granting or denying a motion for new trial, such an order constitutes a "judgment," and a timely filed "motion to reconsider" (construed as a Rule 59(e) motion to alter, to amend, or to vacate) tolls the time for appeal.
In this case, the October 30, 1996 order denying the motion to arbitrate was not signed or initialed. Rule 58, Alabama Rules of Civil Procedure, provides, in pertinent part:
 "(b) Sufficiency of Judgment, Order, or Minute Entry Thereof. A judgment or order, or the minute entry thereof, need not be phrased in formal language nor bear particular words of adjudication. The judgment or order, or the minute entry thereof, will be sufficient if it is signed or initialed by the judge . . . and indicates an intention to adjudicate, considering the whole record, and if it indicates the substance of the adjudication."
(Emphasis added.) Two of the three elements of Rule 58(b) are present in this case: (1) the intention to adjudicate and (2) the substance of the adjudication, i.e., the denial of the motion to compel arbitration. However, the third element, the signature or initials of the trial judge, is not present.
According to the Committee Comments to Rule 58, the rule was amended effective March 1, 1984, to require "that a judgment, order, or minute entry be signed or initialed by the judge." The rationale, as explained by the Committee in its Comments to the March 1, 1984, amendment, is:
 "Under Rule 58(b) there have developed some problems in determining whether an order of the court is intended to serve as a judgment dispositive of the lawsuit or as an order of lesser proportions. . . . This amendment requires the judge to add his signature or initials to the place in the record where the notation of the fact of the judgment appears. While this amendment does not alter the standard for evaluating the sufficiency of the phraseology, it does require, in the form of a signing or initialing, a direct judicial intervention in the process of making up the judgment, order, or minute entry. This mandate of direct involvement by the court should result in a greater concern for the necessity for clarity in a judgment or order."
(Citations omitted.) The entry of an order, signed or initialed by the trial judge, evidences the trial court's intention to adjudicate. See, Cochran v. Wood, 504 So.2d 297 (Ala.Civ.App. 1986).
Thus, the requirement of a judge's signature is to provide evidence of direct judicial intervention. In this case, there is an unsigned, dated entry on the case action summary. Additionally, there is an unsigned, undated handwritten note purportedly made by the trial judge. With two criteria of Rule 58(b) present, how should this Court treat the order? The long-standing policy of this Court, applicable when we receive a record in which the entry of the judgment or order appealed is unsigned, has been to remand the cause to the trial judge for Rule 58(b) compliance. If the trial judge has failed to respond to the remand within 10 days from the date of the remand order, this Court has dismissed the appeal as not being from a final and appealable judgment. Thus, had MS Life timely appealed the October 30, 1996 *Page 449 
order, this Court would have remanded the case for Rule 58(b) compliance.
That policy alone, however, is not enough for this Court to determine that the October 30, 1996 order was an appealable order. Because Rule 58(b) requires the judge's signature for the purpose of providing evidence of direct judicial intervention, we consider the record to determine how the order was treated by the parties and the trial court.
MS Life's June 17, 1998 motion is entitled "Motion to Reconsider Order Denying Motion to Compel Arbitration and to Stay Proceedings." Exhibit G to Answer to Petition for Writ of Mandamus (emphasis added). MS Life thereby moved the trial court "to reconsider its Order denying MS Life's Motion to Compel Arbitration and to stay these proceedings pending a determinationof arbitrability." Exhibit G, supra (emphasis added). On July 1, 1998, the trial court purported to grant MS Life's motion to reconsider. Thus, the parties and the trial court treated the unsigned October 30, 1996 order as an effective order of the trial court. They thereby constituted it the law of the case. MS Life has, by its actions, recognized the trial court's intent to adjudicate the issue. Thus, MS Life cannot avoid the consequences of the October 30, 1996 order by referring to it merely as "an unappealable interlocutory order."
As we have explained, MS Life and Roberson did not agree to submit their dispute to arbitration in the first place, and MS Life did not timely invoke its right to any review of the trial court's October 30, 1996 denial of MS Life's motion to compel arbitration. For both reasons, the July 1, 1998 order granting MS Life's June 17, 1998 motion to reconsider is invalid. Accordingly, the petition for writ of mandamus is granted. The writ shall direct the trial court to vacate its order compelling arbitration and its order staying the proceedings below.
 WRIT GRANTED.
Maddox, Cook, and England, JJ., concur.
Lyons, J., concurs as to the section entitled "Agreement to Arbitrate" and concurs in the result as to all other sections.
Hooper, C.J., and Houston, See, and Brown, JJ., concur in the result.