885 So.2d 119 (2003)
GENERAL MOTORS CORPORATION and Robert T. Feeley, Jr.
v.
STOKES CHEVROLET, INC., et al.
1021446.
Supreme Court of Alabama.
October 24, 2003.
Rehearing Denied January 23, 2004.
Lee M. Hollis, Ivan B. Cooper, and S. Andrew Kelly of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellants.
Leah O. Taylor and Rhonda Pitts Chambers of Taylor & Taylor, Birmingham, for appellees.
*120 LYONS, Justice.
General Motors Corporation ("GM") appeals from the trial court's order denying its motion to compel arbitration. We affirm.

I. Facts and Procedural History
In an earlier appeal in this case, General Motors Corp. v. Stokes, 850 So.2d 1239 (Ala.2002) ("Stokes I"), this Court summarized the operative facts. We restate them here.
"Stokes Chevrolet, Inc. (`the Stokes dealership'), operates a dealership in Clanton that, in addition to the Chevrolet line of the Chevrolet Motors Division of General Motors Corporation (`GM'), sold Chrysler, Plymouth, Dodge, and Jeep vehicles (Stokes's non-GM lines are hereinafter referred to as `the Chrysler assets'). Rick Bush Motors (`Bush') was a GM dealer that also operated in Clanton and that had the authority to sell Buick, Oldsmobile, and Pontiac vehicles, and the GMC line of GM. The Stokes dealership was interested in acquiring from Bush assets to be used in the operation of an Oldsmobile, Pontiac, and Buick dealership. Bush's dealership agreement with GM required GM's approval of the sale of its assets to the Stokes dealership.
"The Stokes dealership obtained GM's approval and purchased Bush's assets; however, a condition of the approval was the Stokes dealership's agreement to relocate the Chrysler assets to another site in Clanton."
850 So.2d at 1240-41.
On April 8, 1999, GM and Stokes Chevrolet, Inc. ("the Stokes dealership"), signed a "Relocation Agreement and Business *121 Plan" ("the relocation agreement"), which paved the way for the Stokes dealership to obtain the authority to sell Oldsmobile vehicles. The relocation agreement mandates that "all claims, disputes, and controversies between the [parties] arising under or relating to [the] agreement" be submitted to arbitration.
On November 1, 2000, the Stokes dealership and GM entered into a "Dealer Sales and Service Agreement" ("the Oldsmobile dealer agreement"), which covered the Oldsmobile line. The Oldsmobile dealer agreement states that the Stokes dealership and GM agreed to resolve disputes in accordance with the terms of the dispute resolution process set out in the agreement. Under this dispute resolution process, disputes are to be resolved through mediation, with certain exceptions, and if the dispute is not resolved through mediation, both parties may then voluntarily agree to arbitrate.
Just over a month later, on December 12, 2000, GM announced that it had decided to halt development of and "phase out" the Oldsmobile line. As a result of the announcement, the Stokes dealership, Kirk A. Stokes, and James H. Stokes (hereinafter referred to collectively as "the Stokeses") sought to recover damages they alleged arose from GM's decision to discontinue the Oldsmobile line. The Stokeses specifically alleged in count one of their complaint a violation of the Alabama Motor Vehicle Dealer Act, § 8-20-4 et seq., Ala.Code 1975 ("the Act"), claiming that GM terminated the Oldsmobile line without notice and without good cause as required by the Act. Count two alleged an allocation claim under the Act. Count three alleged a fraud claim based upon GM's alleged fraudulent suppression and concealment at the time it presented the Oldsmobile dealer agreement to the Stokeses of the fact that it would be shutting down the Oldsmobile line of vehicles. Count four alleged breach of contract and breach of the implied covenant of good faith and fair dealing.
GM filed a motion to compel arbitration pursuant to the relocation agreement. The Stokeses objected to arbitration, arguing that their claims against GM arose solely out of the Oldsmobile dealer agreement. After a hearing, the trial court denied GM's motion to compel arbitration. GM appeals.

II. Standard of Review
"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.'" Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala.2002) (quoting Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999)).

III. Analysis
The Stokeses argue that their claims relate exclusively to the Oldsmobile dealer agreement and that they are thus outside of the scope of the arbitration provision contained in the relocation agreement. The relocation agreement provides, in pertinent part:
"Subject to the following provisions of this Section, GM and the Dealer agree to submit to final and binding arbitration, upon either party's written notice, any and all claims, disputes, and controversies between them arising under or relating to this Agreement and its negotiation, execution, administration, modification, extension or enforcement (collectively, `Claims'). Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) *122 at an AAA regional office nearest the Property."
The Federal Arbitration Act ("the FAA") provides that arbitration agreements "shall be valid, irrevocable and enforceable" except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract defenses that are generally applicable under state law, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement, without contravening 9 U.S.C. § 2. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). See also Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (recognizing that an employer can be "estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action"). To put that principle into the context of this case, we cannot enforce an arbitration clause under circumstances that conflict with the general principles of judicial estoppel.
In Ex parte First Alabama Bank, 883 So.2d 1236, 1244 (Ala.2003), this Court noted the observation of the United States Supreme Court in New Hampshire v. Maine, 532 U.S. 742, 743, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), that "`"[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle."'" (Quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir.1982).) However, the United States Supreme Court did identify several factors as informative in determining the applicability of the doctrine of judicial estoppel. 532 U.S. at 750-51, 121 S.Ct. 1808. The Court held that for judicial estoppel to apply (1) "a party's later position must be `clearly inconsistent' with its earlier position"; (2) the party must have been successful in the prior proceeding so that "judicial acceptance of an inconsistent position in a later proceeding would create `the perception that either the first or second court was misled'" (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir.1982)); and (3) the party seeking to assert an inconsistent position must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 750-51, 121 S.Ct. 1808.
In Stokes I, the Stokeses claimed that GM had breached an alleged promise to reinvoice 63 vehicles the Stokeses acquired from the inventory of Rick Bush Motors ("Bush"), thereby entitling it to a 3 per cent dealer-holdback credit. According to the Stokeses, the promise took place after the Stokes dealership had an agreement "in principal" to purchase the Bush assets. For whatever reason, the promise did not appear in the relocation agreement. The Stokeses, already a GM dealer for the Chevrolet line, contended that their claims did not relate to the relocation agreement because the relocation agreement covered only the promise of the Stokes dealership to relocate the Chrysler assets to another site in Clanton. Unlike the relocation agreement, the preexisting dealership agreement between the Stokes dealership and GM did not contain an obligation to arbitrate. GM rejected that argument and demanded arbitration. The trial court denied GM's motion to compel arbitration. On appeal, we reversed the trial court's order and remanded the case.
In this case, the Stokeses quote the following from GM's earlier brief in Stokes I:
"`[The Stokeses] argue that the terms upon which automobiles may be purchased from [GM] by a dealer are addressed in the various Dealer Agreements, and that because the dealer *123 agreements do not contain arbitration provisions, the current disputes are not subject to arbitration. This argument ignores, however, that the vehicles at issue in this case were not purchased from [GM], but were acquired by the [Stokeses] as part of their negotiated purchase of the assets of Rick Bush Motors. This purchase was not part of the ongoing order of business between a dealer and GM under existing dealer agreements, but was rather a discrete event solely related to the [Stokeses'] acquisition of the Oldsmobile, Buick and Pontiac franchises  which is absolutely and unmistakably covered by the Relocation Agreement and Business Plan containing the arbitration agreement. In addition, [the Stokeses'] claim is not based on the theory that GM breached the Dealer Agreement with respect to the 63 vehicles, but on an alleged, oral statement made during the negotiations related to the purchase and relocation of Bush's assets. The Stokes organization should have to live up to the terms of the written contract bearing the signature "Stokes Chevrolet, Inc."'"
Stokeses' Brief at p. 13 (emphasis added).
This Court accepted that contention and required arbitration, holding as follows:
"Such a transfer of assets is not a part of an ongoing relationship between GM and the Stokes dealership, and it is therefore not subject to the dealer agreement between the parties. Such an alleged promise was a discrete event related to the Stokes dealership's acquisition of the Oldsmobile, Buick, and Pontiac franchises and, therefore, a claim based on that promise constitutes a claim `arising under or relating to' the `negotiation' of the relocation agreement."
Stokes I, 850 So.2d at 1243. Now, when the Stokeses assert claims based on GM's decision to discontinue the Oldsmobile line, GM contends that the Stokeses' claims alleging fraud, breach of contract, and violations of the Act relate to the relocation agreement as opposed to the Oldsmobile dealer agreement exclusively. In other words, now that claims are being asserted that are clearly "a part of an ongoing relationship between GM and the Stokes dealership," these claims are also "not subject to the dealer agreement between the parties."
GM urged this Court in Stokes I to reverse an order denying arbitration in an earlier proceeding between it and the Stokeses by distinguishing the claim in that case from claims that were part of the ongoing order of business between a dealer and GM under existing dealer agreements, thereby indicating that such claims would not be arbitrable. GM cannot now be heard to disavow the logic of its earlier argument in an effort to obtain arbitration of this proceeding involving claims that are clearly part of the ongoing order of business between a dealer and GM under an existing dealer agreement. For this Court to come from the other direction and say a dispute that is a part of the ongoing order of business between a dealer and GM under an existing dealer agreement is also arbitrable under the relocation agreement would suggest that we were misled by GM in Stokes I when we accepted the distinction there advanced by GM between claims arising under a dealer agreement and claims arising under the relocation agreement. Such a facile construction would unfairly advantage GM.
GM urges us to follow unpublished opinions of the federal district courts that essentially stand for the proposition that disputes over the termination of the Oldsmobile line, arising in the context of a relocation *124 agreement containing an arbitration clause that led to the execution of an Oldsmobile dealer agreement, are sufficiently related to the relocation agreement as to require arbitration. However, those cases do not involve a history of prior litigation between the parties as we have here.
We therefore hold that the claims asserted by the Stokeses in the present action are not subject to the arbitration clause contained in the relocation agreement. Although the trial court denied arbitration without stating a reason, the record reflects that the Stokeses directed the trial court's attention to the inconsistency between GM's position in Stokes I and its position in this case. On appeal, the Stokeses advance the same argument in support of the trial court's ruling although in neither instance do they specifically refer to the concept of "judicial estoppel." Nevertheless, the arguments made below and reasserted before us are sufficient to make the defense of judicial estoppel to GM's demand for arbitration a ground for affirmance presented by the record. This Court may affirm a trial court's judgment on "any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court." Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013 (Ala.2003) (citing Ex parte Ryals, 773 So.2d 1011 (Ala.2000), Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988)). Our resolution makes it unnecessary to reach the question whether the transaction involves interstate commerce.

IV. Conclusion
The trial court's order denying GM's motion to compel arbitration is affirmed.
AFFIRMED.
SEE, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
HOUSTON, BROWN, and STUART, JJ., concur in the result.
HOUSTON, Justice (concurring in the result).
I do not find GM's argument in this case inconsistent with its argument in General Motors Corp. v. Stokes, 850 So.2d 1239 (Ala.2002).
However, I would affirm the judgment of the trial court. This case is the mirror image of Cavalier Mfg., Inc. v. Clarke, 862 So.2d 634 (Ala.2003). The relocation agreement provides: "This Agreement will survive the execution of the Dealer Agreement, permitting Dealer to conduct Dealership Operations at the Property...." The Oldsmobile dealer agreement the parties executed approximately six months after the relocation agreement provides, in pertinent part:
"Except as provided in the Agreement or in any other unexpired written agreements executed by both parties ... there are no other agreements or understandings, either oral or written, between the parties affecting this Agreement or relating to any of the subject matters covered by this Agreement."
(Emphasis added.)
In Cavalier Manufacturing, this Court held that "[w]hen parties execute successive agreements and the `two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement.'" 862 So.2d 641 at (quoting CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich.App. 125, 130, 649 N.W.2d 808, 812 (2002)).
The relocation agreement calls for mandatory arbitration. The dealer agreement, while not expressly preempting any non-conflicting *125 provision of the relocation agreement, did trump the conflicting arbitration provision in the relocation agreement, because the relocation agreement provides for voluntary arbitration and the Stokeses did not agree to arbitrate. Therefore, I would affirm.