*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ONB RIDGE VILLA ONE, LLC,

Plaintiff-Appellant,

v

OIL NUT BAY, INC., and DAVID V. JOHNSON,

Defendants-Appellees.

UNPUBLISHED
June 27, 2019

No. 342371
Oakland Circuit Court
LC No. 2016-153593-CB

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, ONB Ridge Villa One, LLC, appeals as of right the trial court's January 5, 2017 order granting defendant David V. Johnson's motion for summary disposition and the court's January 23, 2018 order granting the two motions of defendant, Oil Nut Bay, Inc., (ONB), for partial summary disposition. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is a Michigan Limited Liability Company owned by the Jane E. Von Voigtlander Irrevocable Trust No. 3. The Trust's co-trustees, Gwen Haggerty-Bearden and Steven Bearden, formed plaintiff to purchase a parcel of land in May 2009 from ONB. The parcel is located in the British Virgin Islands and is known as Oil Nut Bay Ridge Villa 1 (RV1). According to the terms of the sale and purchase agreement, plaintiff was to develop and build on the parcel a vacation rental property called Brise de Mer. Defendant Johnson is the chairman and authorized representative of ONB.

According to plaintiff, Johnson approached Bearden sometime in 2011 and asked for permission to build a road across RV1 to facilitate easy access to transport building materials and workers to two adjacent lots, Oil Nut Bay Ridge Villa 2 (RV2) and Estate Lot 23 (EL23). Plaintiff contends that in return for its permission to build the road, ONB promised Bearden to provide RV1 with a staging area for building materials, storage space for the development of RV1, utilities, and the ability to use the access road for the construction of Brise de Mer.

-1-

Providing a different account of the road, ONB contends that the original proposal for the construction of Brise de Mer included a circular driveway. In addition to RV1, the two adjacent lots also planned for circular driveways, but all three experienced problems with the circular driveway design. ONB maintains that, in 2011, plaintiff asked ONB to construct a shared driveway for the three lots as a solution. Thus, according to ONB, the road at issue is a shared driveway, not an internal access road across RV1, and plaintiff requested the construction, not ONB.

The road never materialized. Plaintiff filed a complaint against defendants on June 20, 2016, and a first amended complaint on August 8, 2016, alleging breach of contract, promissory estoppel, and unjust enrichment against ONB, and promissory estoppel against Johnson. In addition, plaintiff alleged a count against both defendants for "tortious interference with contracts and business expectances" arising from plaintiff's frustrated attempts to contract independently with vendors who provided services to villas that had signed a property management agreement with ONB. Under the agreement, ONB would provide landscaping maintenance, housekeeping, and pest control services to unoccupied villas in return for a 15% management fee of the total fees charged for the services provided. Dissatisfied with the 15% management fee, plaintiff declined to sign the agreement and arranged for several vendors ONB used to perform services for Brise de Mer apart from ONB's property management program. In response, ONB gave the vendors the choice of continuing to provide services in its program and receive free transportation to the villas and other benefits, or provide services to plaintiff or other property owners apart from the program and pay for its own transportation to ONB and other needs itself. Alleging that this practice represented tortious interference with its contracts and business expectations, plaintiff sought a temporary restraining order and a permanent injunction against ONB. In each count of its complaint plaintiff included a claim for exemplary damages.

In lieu of filing answers to plaintiff's first amended complaint, defendants filed separate motions for summary disposition on August 29, 2016.[1] Johnson sought summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that the statute of frauds barred plaintiff's claim against him for promissory estoppel and that plaintiff's claim for tortious interference fails as a matter of law because plaintiff's claim that he personally interfered with any of plaintiff's contracts or business expectancies lacked factual support. In a motion for summary disposition pursuant to MCR 2.116(C)(1), ONB argued that the trial court lacked personal jurisdiction over it because it is a foreign corporation with a registered office and agent in the British Virgin Islands, and it neither owned property nor maintained any employees in Michigan. In its response to Johnson's motion, plaintiff argued that summary disposition was premature, that the statute of frauds did not apply to agreements to develop property, and that Johnson could be held liable for personally and maliciously damaging the business relationships between plaintiff and various vendors. With respect to ONB, plaintiff relied on the affidavits of persons who had attended numerous meetings with ONB's representatives in Oakland County, Michigan, and on an invoice from ONB that included a letterhead with an address located in Clarkston, Michigan

---

[1] These were defendants' second motions for summary disposition, both defendants having previously filed motions for summary disposition in response to plaintiff's original complaint.

to argue that it had established that the trial court had both general and limited jurisdiction over ONB. Both defendants filed reply briefs reasserting their positions.

Subsequent to a hearing on defendants' motions, the trial court entered an opinion and order granting Johnson's motion for summary disposition with respect to plaintiff's claims for promissory estoppel and tortious interference, and denying ONB's motion for summary disposition pursuant to MCR 2.116(C)(1). With respect to Johnson, the court observed that plaintiff alleged Johnson made promises in his capacity as the agent for ONB and for the benefit of ONB. Consequently, the trial court granted Johnson's motion for summary disposition of plaintiff's promissory estoppel claim pursuant to MCR 2.116(C)(8) because an agent for a disclosed principal cannot be held personally liable for the principal's obligation. See *Huizenga v Withey Sheppard Assoc*, 15 Mich App 628, 633; 167 NW2d 120 (1969). With respect to tortious interference, the trial court noted that plaintiff blurred the distinct causes of action of tortious interference with a contract and tortious interference with a business relationship or expectancy, and that under either theory, plaintiff had to establish that Johnson was a third party rather than an agent of one of the parties. Having concluded that Johnson was an agent of ONB, the trial court ruled that plaintiff could not maintain a cause of action against Johnson under either theory of tortious interference.

On July 28, 2017, ONB filed a motion for partial summary disposition with respect to plaintiff's claims for breach of contract, unjust enrichment, and promissory estoppel pursuant to MCR 2.116(C)(8) and (10). ONB argued that the statute of frauds barred all of these claims because they all concerned an easement to build an access driveway, no written agreement regarding the alleged easement exists, and there was no agreement regarding the essential terms of the alleged agreement for an easement. On the same day, ONB filed a separate motion for partial summary disposition with respect to plaintiff's claim for tortious interference with contracts and business expectancies, also pursuant to MCR 2.116(C)(8) and (10). ONB argued that plaintiff failed to plead the necessary elements of either tortious interference claim, that legitimate business reasons motivated its actions, and that plaintiff's claim lacked support.

In opposition to ONB's motions, plaintiff argued that the statute of frauds did not bar its claims for breach of contract, promissory estoppel, and unjust enrichment because they did not involve the establishment or enforcement of an easement, but the timely development of an access road. Plaintiff argued that ONB made several clear and unequivocal promises upon which plaintiff relied, and that there were genuine issues of material fact as to whether ONB was unjustly enriched. With respect to plaintiff's claim of tortious interference, plaintiff argued that it had alleged a viable claim that ONB threatened to cease doing business with the vendors that provided plaintiff services unless they stopped working for plaintiff, and that there were genuine issues of material fact as to whether ONB's actions were legitimate or a pretext for malicious intent. Plaintiff further argued that discovery was not yet complete, and that the recent damage inflicted by Hurricane Irma made it "impossible" for plaintiff to complete the necessary discovery. In a reply brief, ONB generally reasserted its arguments in support of its motions for partial summary disposition.

Subsequent to hearing oral argument and taking the matter under advisement, the trial court entered an opinion and order granting ONB's motions for partial summary disposition and dismissing all four counts in their entirety. The trial court found that the access road constituted

an easement and, therefore, that the statute of frauds barred plaintiff's claim for breach of contract because a written agreement did not exist. The trial court further found that summary disposition would be appropriate even if there had been a form of writing because there was no meeting of the minds regarding the essential elements of the alleged oral contract. Likewise, the trial court found that the statute of frauds barred plaintiff's claims for promissory estoppel and unjust enrichment. The trial court concluded that the evidence established that the parties failed to reach an agreement, and that plaintiff could not demonstrate that it was induced to act based on an undefined promise. Similarly, plaintiff's claim for unjust enrichment was untenable because "no valid easement ever came to fruition," and ONB never received a benefit. The trial court dismissed plaintiff's claim against ONB for tortious interference because plaintiff failed to respond to ONB's argument that plaintiff did not allege that ONB engaged in a per se wrongful act or intentionally engaged in a lawful act with malice and without a proper purpose. Accordingly, the trial court found that plaintiff's claim was so deficient as a matter of law that no factual development would justify recovery.[2]

## II. DISCUSSION

On appeal, plaintiff argues that the trial court erred by granting Johnson's motion for summary disposition and ONB's motions for partial summary disposition. Specifically, plaintiff contends that the statute of frauds does not apply to its claim for breach of contract, promissory estoppel, and unjust enrichment, and material questions of fact exist with respect to each of these claims, as well as to its claim for tortious interference. Plaintiff also argues that summary disposition was premature because the destruction caused by Hurricane Irma made discovery impossible to complete. We will address each argument in turn.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision whether to grant a motion for summary disposition de novo. *Kelly-Stehney & Assoc, Inc v MacDonald's Indus Prod, Inc*, 265 Mich App 105, 110; 693 NW2d 394 (2005). Johnson and ONB moved for summary disposition pursuant to MCR 2.116(C)(8) and (10).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). All factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts and are construed in the light most favorable to the nonmoving party. *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012); *Gorman v American Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013). A motion under MCR 2.116(C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Johnson*, 491 Mich at 435.

---

[2] The trial court dismissed plaintiff's claim for exemplary damages because it is not an independent cause of action. The court did not address plaintiff's arguments regarding discovery and the impact of Hurricane Irma.

A motion made under MCR 2.116(C)(10) tests the factual support of a claim, *Joseph v Auto club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, MCR 2.116(C)(10). The moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). The party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of material fact exists. *Id*. at 441. A genuine issue of material fact exists if, after viewing the record in a light most favorable to the nonmoving party, reasonable minds could differ on an issue. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court reviews only the evidence that was presented at the time the motion was decided, which, under MCR 2.116(C)(10), includes affidavits, pleadings, depositions, and other evidence that the parties submitted. See *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

"Similarly, '[t]his Court reviews de novo questions of law such as whether the statute of frauds bars enforcement of a purported contract.' " *Kelly-Stehney & Assoc, Inc*, 265 Mich App at 110, quoting *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995).

## B. BREACH OF CONTRACT

Plaintiff first argues that the trial court erred by granting ONB's motion for partial summary disposition because the statute of frauds does not bar its claim for breach of contract. Specifically, plaintiff contends that the oral agreement between the parties pertained to the development of an access road, not the conveyance of an interest in the access road. We disagree.

The record makes clear that the construction of the road at issue involved more than the mere development of property, it involved the right to use the property of another for a specific purpose. This is the classic definition of an easement. "An easement is the right to use another's land for a specified purpose." *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007) (quotation marks and citation omitted). Plaintiff alleges that ONB wanted to build the access road across plaintiff's property so that it could easily access the lots on either side of plaintiff's property, RV2 and EL23. In its first amended complaint and in communications between the parties, plaintiff indicated that an easement was at issue. In paragraph 20 of the first amended complaint, plaintiff alleged as an example of Johnson's unfulfilled promises that ONB demanded that plaintiff pay its proportional costs of the access road and driveway "despite Defendant Johnson's clear and unequivocal promise that if Plaintiff granted the easement that Defendant ONB would pay for that access road." In paragraph 48 of its first amended complaint, plaintiff alleged that ONB "has been unjustly enriched by receiving the easement without paying for the access road, timely providing the access road, driveway, or staging area as agreed."

In addition, numerous e-mails show that plaintiff understood that the access road involved a shared easement. In a January 14, 2014 e-mail, Johnson responded to Bearden's prior concerns about the absence of a timeline or design for the access road by indicating that Jennifer Merriman, legal counsel for one of the companies involved in ONB, would prepare "[l]egal easements . . . for uninterrupted access to each property as it is effectively a shared driveway." Approximately two weeks later, Bearden e-mailed his architect asking for help in recalling the

details of the "Shared Easement/Access Road for RV1." In a February 10, 2014 e-mail, Bearden asked Johnson to have drafted "legal easement agreements as previously discussed to provide us a complete understanding of the costs, access, usage and maintenance related to the access road." On July 4, 2014, Doug Turnbull[3] sent an e-mail to Merriman asking for a draft easement for RV1. Merriman replied to Turnbull's e-mail on July 11, 2014, attaching a generic draft easement for Turnbull's review. In light of the record before us, we conclude that the parties' negotiations involved an easement.[4]

Because an easement is the transfer of a property interest, it is subject to the statute of frauds. See *Zaher v Miotke*, 300 Mich App 132, 140; 832 NW2d 266 (2013). As codified in MCL 566.106, the statute of frauds states in relevant part:

> No estate or interest in lands . . . shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

The statute summarizing the requirements for contracts concerning the transfer of an interest in property, MCL 566.108, provides:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

Thus, "[u]nder the statute of frauds, MCL 566.106 and MCL 566.108, an easement . . . must be made in writing and signed by everyone with an interest in the property." *Zaher*, 300 Mich App at 138. At a minimum, the statute of frauds requires " 'a note or memorandum of the [alleged] agreement' " that "is in writing and signed." *Kelly-Stehney & Assoc, Inc*, 265 Mich App at 111, quoting MCL 566.132(l). There was no such agreement between the parties, and therefore, the

---

[3] Turnbull appears to be one of plaintiff's representatives. Jaime Rae Turnbull, who was copied on the e-mail exchange between Doug Turnbull and Jennifer Merriman, worked as an owner's representative for Luxe Partners and became involved in the development of RV1. She stated in an affidavit that she often communicated with ONB on plaintiff's behalf.

[4] In a reply brief, plaintiff raises an issue concerning the doctrine of partial performance and argues for the first time that the right to travel RV1 was a license, and therefore, was not subject to the statute of frauds. This argument is not properly before this Court because reply briefs are limited to "rebuttal of the arguments in the appellee's or cross-appellee's brief . . . ." MCR 7.212(G). Further, "raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003).

statute of frauds bars plaintiff's claim for breach of contract. Accordingly, the trial court properly granted ONB summary disposition because plaintiff's claim for breach of contract fails as a matter of law.[5] Because the trial court properly granted ONB summary disposition on the ground that the statute of frauds bars plaintiff's claim, we need not address the trial court's alternative grounds for summary disposition, namely, that there was no meeting of the minds on the essential elements of the alleged contract.

## C. PROMISSORY ESTOPPEL

Plaintiff next argues that the trial court erred when it granted ONB partial summary disposition with respect to its claims for promissory estoppel because the essential elements of a claim for promissory estoppel were satisfied.[6] We disagree.

The elements of promissory estoppel are: "(1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided." *Zaremba*

---

[5] Plaintiff contends that the facts in the case at bar are nearly identical to those in *Overstreet v Brookland*, 52 NC App 444, 454; 279 SE2d 1 (1981), wherein the North Carolina Court of Appeals held that the defendant developer's "promise to construct and maintain a road [to the plaintiffs' lot] does not come within the statute of frauds." Although cases from foreign jurisdictions are not binding, they may be persuasive. See *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006). However, we do not find *Overstreet* persuasive. The plaintiff homeowners in *Overstreet* had an easement in the streets shown on the plat leading to their lot. The developer promised, both orally and in writing, to "cut a sixty foot right-of-way to plaintiffs' lot, and [to] properly ditch, gravel and maintain a road to plaintiffs' lot." *Overstreet*, 52 NC App at 451. Evidently, the developer had provided the road, but had failed to maintain it as promised. *Id*. Thus, the plaintiffs' suit was not to establish or enforce an easement, but to enforce the developer's promise to properly construct and maintain the road. In the present case, plaintiff has failed to present a genuine issue of material fact that ONB promised what plaintiff alleges that it promised. We are also unpersuaded by plaintiff's reliance on *Koffman v Mathews*, 352 Mich 390; 89 NW2d 756 (1958), and *Summers v Hoffman*, 341 Mich 686; 69 NW2d 198 (1955), both of which are factually distinguishable from the case at bar.

[6] Although plaintiff's statement of the issues refers to both defendants, plaintiff does not address in its brief the trial court's grant of summary disposition of plaintiff's claim for promissory estoppel to Johnson on the ground that an agent of a disclosed principal may not be held personally liable for promises made on behalf of the principal. See *Huizenga v Withey Sheppard Assoc*, 15 Mich App at 633 ("It is a well accepted rule that where the principal is disclosed and the agent is known to be acting as such, the agent cannot be made personally liable unless he agreed to become personally liable."). Accordingly, we consider the issue abandoned. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) (indicating that an appellant may not fail to address the basis of the trial court's decision, and that failure to properly address the merits of an assertion of error constitutes abandonment of the issue).

*Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008). "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made." *Id*. (citation and internal quotation marks omitted). The promise upon which the promisee relied must be definite and clear, and the promisee's reliance must be reasonable. *Id*. Even when all of the elements have been satisfied, promissory estoppel must be cautiously applied, and only when "the facts are unquestionable and the wrong to be prevented undoubted." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 687; 599 NW2d 546 (1999).

Plaintiff alleged in its first amended complaint that ONB "issued a series of clear and definite promises" to plaintiff that included the provision of an access road, and that plaintiff relied to its detriment on these promises and granted defendant access across its property. Plaintiff's allegations imply that it gave ONB an easement in exchange for provision at ONB's expense of an access road, but ONB has not fulfilled its promise. Promissory estoppel may not be used to avoid the statute of frauds because "an interest in land cannot be established on the basis of estoppel . . . ." *Kitchen v Kitchen*, 465 Mich 654, 660; 641 NW2d 245 (2002). We have already determined that the evidence indicates that the access road to which plaintiff refers involved an easement, and that an easement "must be made in writing and signed by everyone with an interest in the property." *Zaher*, 300 Mich App at 138. Plaintiff may not use promissory estoppel to circumvent the requirements of the statute of frauds. *Kitchen*, 465 Mich at 660.

As evidence of the parties' agreement, plaintiff points to Bearden's affidavit, in which Bearden states that he e-mailed Johnson on January 24, 2014 "to confirm and remind him of his promises." The e-mail states in relevant part:

> Our plans were always to have a small drive and for our drive to be private but back in 2011 you approached us requesting we give you an easement so that you could build an access road for EL25 [sic] through our lot (and RV2). The benefit presented to us would be an easier approach to our home and that the costs would be covered by ONB. However, now you are telling us 'Each property will be responsible for its proportional cost for implementation.' David, we are way over budget already and to now be asked to spend more money on an access road is not something we are keen about.

Plaintiff asserts that this e-mail offers confirmation of the parties' 2011 agreement, "as does Johnson's conspicuous failure to ever deny receiving same." However, Johnson did deny plaintiff's assertions. In a February 16, 2014 e-mail, Johnson wrote in relevant part:

> The access road originated from [David] Snider [plaintiff's former contractor] because the proposed circular driveway for [RV1] would not work. Fred Ball, who was at the time trying to purchase [EL23], encountered the same issues. Therefore, the access drive evolved into a three party, three lot access drive, and considerable effort, energy, and planning has gone into it. This access road was not forced on you at any time. It is my understanding that the agreement was and is that you would contribute to the access road an amount equal to that which you would have spent for the proposed circular driveway that included

entrance, access, walls, etc., and [ONB] and the adjoining lot owners would pay their proportionate share. . . .

Other than assertions in plaintiff's first amended complaint and Bearden's affidavit, nothing in the documents presented to the trial court indicate that ONB ever made a "definite and clear" promise to provide an access road across plaintiff's property at its own expense. See *Zaremba Equip, Inc*, 280 Mich App at 41. To the contrary, the record evidence, viewed in the light most favorable to plaintiff, shows that there was no agreement reached regarding costs, construction schedules, financial responsibilities, or even the design of the proposed roadway. Accordingly, notwithstanding the statute of frauds, plaintiff's claim for promissory estoppel is meritless.

## D. UNJUST ENRICHMENT

Plaintiff next argues that the trial court erred when it granted partial summary disposition to ONB because it established the essential elements of a claim for unjust enrichment. We disagree.

The doctrine of unjust enrichment is the equitable counterpart of a claim for breach of contract. *AFT Michigan v Michigan*, 303 Mich App 651, 677; 846 NW2d 583 (2014). Unjust enrichment occurs when an individual has and retains money or benefits that belong to another in both justice and equity. *Id*., citing *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952). To sustain a viable claim for unjust enrichment, the plaintiff must establish: " '(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.' " *AFT Michigan*, 303 Mich App at 677-678, quoting *Morris Pumps v Centerline Piping Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006).

Plaintiff's claim for unjust enrichment is meritless because the easement never came to fruition, and therefore, ONB never received a benefit from plaintiff. According to Johnson's affidavit, ONB did not benefit from using an access road; it developed RV2 and EL23 by using a main access road that connected to the individual driveways. Plaintiff presents no evidence to contradict this assertion. While plaintiff may have incurred additional expenses because of construction delays, it provides no evidence that it did so because of a benefit that ONB unjustly received. Accordingly, partial summary disposition was appropriate with respect to plaintiff's claim for unjust enrichment.

## E. TORTIOUS INTERFERENCE

Plaintiff next challenges the trial court's decision to grant Johnson summary disposition with respect to its claim for tortious interference by arguing that Johnson is personally liable for his individual tortious acts. We disagree.

Plaintiff alleges that Johnson personally and maliciously sabotaged its business relationships with certain vendors because plaintiff refused to agree to the terms of ONB's property management service agreement. According to plaintiff, Johnson personally directed ONB's employees to threaten the vendors that plaintiff independently hired to service RV1 and Brise de Mer.

At the outset, plaintiff fails to differentiate between interference with a contract and tortious interference with business relationships or expectancies, which are distinct causes of actions. See *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89; 706 NW2d 843 (2005) ("In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy."). "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Id*. at 89-90. For tortious interference with business relationships or expectancies, the elements include: "(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Id*. at 90.

A corporate officer may be held individually liable when he or she personally causes their corporation to act unlawfully. *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 17-18; 779 NW2d 237 (2010). However, "[t]o maintain a cause of action for tortious interference, the plaintiff must establish that the defendant was a 'third party' to the contract rather than an agent of one of the parties acting within the scope of its authority as an agent." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 593; 683 NW2d 233 (2004). Plaintiff fails to address this initial hurdle to establish its claim for tortious interference. Without demonstrating that Johnson was a third party, plaintiff's claim for tortious interference under either legal theory fails as a matter of law. Moreover, there is no evidence that Johnson personally directed ONB's representatives to make these threats. Emily Oakes admitted that she made the decision herself to inform the vendors who independently serviced RV1 and Brise de Mer that it could not work for plaintiff and ONB. Accordingly, there is no question of fact as to whether Johnson tortiously interfered with plaintiff's business relationships or expectancies or tortiously interfered with plaintiff's contracts.

Plaintiff next challenges the trial court's decision to grant ONB partial summary disposition with respect to its claim for tortious interference with a business relationship. We disagree.

To sustain a viable claim for tortious interference with a business relationship, the plaintiff must allege " 'the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' " *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002), quoting *Feldman v Green*, 138 Mich App 360, 378; 360 NW2d 881 (1984). If the defendant's actions were not wrongful per se, the plaintiff must establish specific, affirmative acts that substantiate the unlawful purpose of the interference. *CMI Int'l, Inc*, 251 Mich App at 131. Although the plaintiff need not allege these specific acts until trial, the plaintiff must sufficiently demonstrate specific, corroborative acts in order to raise a genuine issue of material fact and avoid summary disposition. *Id*. at 132. However, if the defendant's actions were motivated by a legitimate business reason, its actions do not constitute improper motive or interference. See *Dalley v Dykema Gossett*, 287 Mich App 296, 324; 788 NW2d 679 (2010).

Plaintiff seemingly argues that ONB's threats to the vendors whom plaintiff independently retained were lawful acts with malice and without a legal justification. Plaintiff claims that ONB threatened to terminate its contracts with those vendors that serviced RV1 and Brise de Mer because plaintiff did not participate in the property management service program. Notably, plaintiff does not respond to ONB's argument that it had legitimate business purposes—to limit its liability, reduce costs, and protect its relationship with its vendors—behind its policy to only contract with vendors that exclusively service those villas that participate in the property management service program. In order to survive a motion for summary disposition, plaintiff must put forth some evidence to create a factual question as to whether ONB committed a wrongful act that had no justification, and did so with malice and the intent to induce the vendors to stop servicing RV1 and Brise de Mer. *CMI Int'l, Inc*, 251 Mich App at 131-132. Plaintiff failed to do so by merely rejecting ONB's justification for having exclusive vendor relationships, which warranted partial summary disposition.

## F. DISCOVERY

Finally, plaintiff argues that the trial court abused its discretion by declining plaintiff's request for additional discovery and erred by granting ONB summary disposition because Hurricane Irma made it "impossible" to complete discovery. We disagree. We review for an abuse of discretion a trial court's decision to deny a request for additional discovery. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 214-215; 859 NW2d 238 (2014). "An abuse of discretion exists when the trial court's decision results in an outcome that falls outside the range of principled outcomes. *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010).

"Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Marilyn Froling Revocable Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). "However, the fact that the discovery period remains incomplete does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate." *Id*. Summary disposition is appropriate if there is no fair chance that further discovery would uncover factual support for the nonmoving party's position. *Id*.

Under MCR 2.116(H)(1), "[a] party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure." It is insufficient for a party opposing summary disposition to simply state that summary disposition is premature without identifying an issue in dispute and supporting that disputed issue with independent evidence. *Marilyn Froling Revocable Trust*, 283 Mich App at 292, citing MCR 2.116(H)(1). The party opposing summary disposition must proffer affidavits that name the persons whose affidavits cannot be procured, why their testimony cannot be procured, the nature of their probable testimony, and "the reason for the party's belief that these persons would testify to those facts." MCR 2.116(H)(1)(a) and (b).

Plaintiff argues that the trial court should have denied ONB's motions for partial summary disposition under MCR 2.116(H)(1) because plaintiff was unable to take the depositions of those vendors relevant to plaintiff's claim for tortious interference. However, plaintiff has not shown that there was a fair chance that further discovery would have revealed

any evidence of ONB's alleged tortious interference with plaintiff's business relationships. There is ample documentary evidence of ONB's policy to contract with vendors that exclusively service villas that participate in the property management service program as well as ONB's communication with those vendors after plaintiff declined to participate in the program. Moreover, plaintiff fails to identify an issue in dispute that would warrant the trial court's denial of summary disposition under MCR 2.116(H)(1). Nor does plaintiff provide the nature of the probable testimony that the vendors would give, or the reason why plaintiff believed the vendors would testify to certain facts. Accordingly, the trial court did not err by granting ONB partial summary disposition because there is no merit to plaintiff's argument.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause