CMI INTERNATIONAL, INC v INTERMET INTERNATIONAL
CORPORATION

Docket No. 225585. Submitted December 11, 2001, at Detroit. Decided
April 30, 2002, at 9:15 A.M.

CMI International, Inc., brought an action in the Oakland Circuit
Court against Intermet International Corporation and Gary Ruff,
seeking a preliminary injunction against Intermet's hiring of Ruff, a
former CMI employee. CMI alleged, among other things, that the
hiring of Ruff would breach a March 1998 agreement between CMI
and Intermet providing for an eighteen-month prohibition against
any Intermet hiring of CMI employees without CMI's consent, that
the hiring would constitute tortious interference by Ruff with CMI's
contractual relations with Intermet, and that the hiring would give
rise to threatened misappropriation of trade secrets under the Uni-
form Trade Secrets Act, MCL 445.1901 *et seq.* The court, Colleen A.
O'Brien, J., denied the request for a preliminary injunction and
granted summary disposition for the defendants before discovery
was completed. CMI appealed.

The Court of Appeals *held*:

1. The trial court did not err in ruling that the March 1998 agree-
ment between CMI and Intermet had been superseded by a July
1998 agreement that prohibited Intermet from soliciting CMI
employees for one year without CMI's consent, and that the later
agreement was not violated inasmuch as it was Ruff who
approached Intermet about employment.

2. The trial court did not err in summarily dismissing the claim of
tortious interference by Ruff with CMI's contractual relations with
Intermet. CMI failed to show that Ruff committed an act wrongful
per se or that he committed a lawful act with malice and without
justification in the law for the purpose of invading CMI's contrac-
tual rights or business relationship.

3. The trial court did not err in refusing to grant a preliminary
injunction and in granting summary disposition with respect to the
claim of threatened misappropriation of trade secrets. A party
claiming threatened misappropriation of trade secrets under a the-
ory of inevitable disclosure or any other theory must establish
more than the existence of generalized trade secrets and a compet-

itor's employment of the party's former employee who has knowledge of the trade secrets. In this case, CMI offered no evidence of duplicity by Ruff or Internet beyond the employment of Ruff and failed to even suggest a specific trade secret that the defendants were likely to misappropriate.

4. A grant of summary disposition before discovery is completed is not premature where, as here, there is no fair chance that further discovery will allow the party opposing the motion to present sufficient support for its allegations.

Affirmed.

1. CONTRACTS — SUBSEQUENT CONTRACTS.

The later of two agreements that cover the same subject matter and include inconsistent terms supersedes the earlier agreement.

2. TORTS — INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONSHIPS.

A plaintiff who alleges tortious interference with a contractual or business relationship, in order to withstand a motion for summary disposition, must demonstrate that the defendant committed an act wrongful per se or that the defendant committed a lawful act with malice and without justification in the law for the purpose of invading the plaintiff's contractual rights or business relationship.

3. STATUTES — UNIFORM TRADE SECRETS ACT — THREATENED MISAPPROPRIATION OF TRADE SECRETS — FORMER EMPLOYEES — EMPLOYMENT BY COMPETITORS — PRELIMINARY INJUNCTIONS.

An employer seeking to preliminarily enjoin a competitor from hiring a former employee of the plaintiff on the basis of a claim that such employment would lead to the inevitable disclosure of the plaintiff's trade secrets must establish more than the existence of generalized trade secrets and the competitor's employment of the plaintiff's former employee with knowledge of the trade secrets; the plaintiff must show that its trade secrets are likely to be misappropriated (MCL 445.1903).

*Barris, Sott, Denn & Driker, P.L.L.C.* (by *Stephen E. Glazek* and *Todd R. Mendel*), for the plaintiff.

*Dickinson Wright PLLC* (by *Edward H. Pappas, Daniel D. Quick,* and *Charles G. Goedert*), for the defendants.

Before: MURPHY, P.J., and NEFF and HOEKSTRA, JJ.

PER CURIAM. Plaintiff, CMI International, Inc., appeals as of right from the trial court's order granting defendants Intermet International Corporation and Gary Ruff summary disposition on all of CMI's claims. Specifically, CMI challenges the trial court's grant of summary disposition on CMI's contract-related and misappropriated trade secrets claims with regard to Intermet's hiring of Ruff, a former employee of CMI, and its denial of CMI's request for a preliminary injunction to prevent Ruff from working for Intermet. We affirm.

Both CMI and Intermet develop and manufacture casting and forged metal parts for the automobile industry. In 1998, CMI was in the market to be sold, acquired, or merged. Intermet expressed interest in a merger or acquisition of CMI and these parties commenced negotiations. During the discussions, CMI required Intermet to sign a confidentiality agreement, which the parties executed on March 31, 1998 (March agreement). The agreement prohibited Intermet during an eighteen-month period from hiring any CMI managerial, sales, or technical employee without CMI's consent.

In the summer of 1998, negotiations between CMI and Intermet failed, and CMI sought the assistance of an investment banker to auction the company. Any company participating in the auction process was required to sign a standard confidentiality agreement that prohibited soliciting CMI employees for one year without CMI's consent; however, the confidentiality agreement did not address the hiring of CMI employees. Intermet participated in the auction process and signed the agreement on July 23, 1998 (July agree-

ment). Eventually, Hayes Lemmerz International, Inc. purchased CMI.

When Hayes acquired CMI, Ruff, who is a mechanical engineer with a master's degree in metallurgical engineering and a Ph.D. in metallurgy and materials science, was CMI's chief technical officer. Ruff had worked in the metal casting business for eighteen years before CMI hired him in 1987. Ruff clearly was a key employee of CMI at the time Hayes purchased CMI. At that time, Hayes offered him three options: accept a demotion; accept a business, rather than technical, position with Hayes; or accept a severance package from CMI, which would prohibit him from working for a competitor for eighteen months. Ruff accepted a nontechnical position as president of Hayes' North American cast wheels business unit. However, by April 1999, Ruff decided to look for another job and he contacted Intermet. In May 1999, Intermet hired Ruff to assume essentially the same duties as those that he performed for CMI and Ruff tendered his resignation to his current employer.

On June 24, 1999, CMI filed suit against defendants, seeking specific performance and alleging breach of contract, violation of the Uniform Trade Secrets Act (UTSA), MCL 445.1901 *et seq.*, tortious interference with contractual relations, unjust enrichment and constructive trust, inevitable breach of trust and fiduciary duty, and conspiracy. The trial court denied CMI's request for a preliminary injunction, concluding that an injunction would be against public policy favoring the freedom to change jobs and would encroach on Ruff's rights. Further, the trial court found that CMI had failed to establish the existence of trade secrets. On November 5, 1999, this Court

denied CMI's interlocutory application for leave to appeal.

Meanwhile, on November 2, 1999, defendants filed a motion for summary disposition and a motion for stay of discovery pending resolution of the summary disposition motion. In opposition to the latter motion, CMI argued that the trial court should not decide the summary disposition motion until after discovery because certain information was known only to defendants regarding Ruff's use or disclosure of confidential information. On November 18, 1999, the trial court denied defendants' motion to stay discovery. However, pursuant to its bench ruling on February 9, 2000, the trial court entered an order the next day granting the motion for summary disposition of all claims. The trial court concluded that it was against public policy to issue an injunction requiring Intermet to withdraw its employment offer. Further, it found that the July agreement superseded the March agreement. The trial court also concluded that CMI failed to present the court with "actual proof" of disclosure or inevitable disclosure of trade secrets in violation of the UTSA and that the statute displaced all other claims regarding misappropriation of trade secrets. This appeal ensued.

On appeal, CMI challenges the trial court's denial of a preliminary injunction and its decision to grant defendants summary disposition, essentially on the basis of two theories: breach of the March agreement with Intermet and trade secret misappropriation. We review for abuse of discretion a trial court's decision to deny a preliminary injunction. *Michigan State AFL-CIO v Secretary of State*, 230 Mich App 1, 14; 583 NW2d 701 (1998). We review de novo a trial court's

grant of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

Plaintiff argues that the trial court erred in denying its request for a preliminary injunction and in granting summary disposition in favor of defendants with respect to the March agreement because, plaintiff argues, that agreement was enforceable. We disagree. Rather, we agree with the trial court that the July agreement between Intermet and CMI superseded their March agreement and that CMI could not establish a breach of contract. The March agreement was a confidentiality agreement under which Intermet could learn certain information about CMI subject to restrictions. Included in that agreement was that Intermet would not directly or indirectly solicit to hire any officer, executive, employee, or agent of CMI, "or solicit for employment or employ any person who is now employed by [CMI] in a managerial, sales or technical position for a period of eighteen (18) months from the date of this agreement, except with prior written consent of [CMI]." The July agreement prohibited only soliciting to hire any CMI employee, or under certain circumstances a former employee, for a period of one year from the date of the agreement without written consent from CMI. CMI does not assert that Intermet solicited Ruff.

When two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement. *Omnicom of Michigan v Giannetti Investment Co*, 221 Mich App 341, 347; 561 NW2d 138 (1997). In the present case, both agreements addressed Intermet's rights regarding CMI employees and included inconsistent limitations. A limit on solicitation in the July agree-

ment would not have been necessary had the March limit on hiring still been in force. Because the agreements covered the same subject matter at issue and included inconsistent terms, the July agreement superseded the March agreement. *Id.* Thus, summary disposition of CMI's breach of contract claims based on the March agreement was appropriate, as was the denial of a preliminary injunction to enforce the March agreement.

. CMI also argues that the trial court erred in dismissing its claim against Ruff for tortious interference with contractual relations with Intermet. To establish tortious interference, a plaintiff must show that the defendant unjustifiably instigated a breach of contract. *Mahrle v Danke*, 216 Mich App 343, 350; 549 NW2d 56 (1996); *Admiral Ins Co v Columbia Casualty Ins Co*, 194 Mich App 300, 312; 486 NW2d 351 (1992). In *Feldman v Green*, 138 Mich App 360, 378; 360 NW2d 881 (1984), this Court held:

> [O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.

See also *id.* at 369; *Prysak v R L Polk Co*, 193 Mich App 1, 12; 483 NW2d 629 (1992); *Stanton v Dachille*, 186 Mich App 247, 255; 463 NW2d 479 (1990). If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference. *Feldman, supra* at 369-370; see also SJI2d 125.04.

Here, plaintiff argues that it need not allege specific acts until trial. However, in order to raise a genuine issue and therefore escape summary disposition, a plaintiff must sufficiently demonstrate specific, corroborative acts, *Feldman, supra* at 369-370, which plaintiff has failed to do. Plaintiff failed to even argue that Ruff did anything more than seek new employment, and the only evidence regarding his motive suggests that he simply wanted a more technical position. Thus, plaintiff failed to sufficiently demonstrate specific acts corroborating that Ruff's purpose was unlawful. Summary disposition was appropriate.

CMI's remaining claims necessarily are based on Michigan's UTSA, because that statute displaced conflicting tort remedies for misappropriation of a trade secret. MCL 445.1908; *Compuware Corp v Serena Software Int'l, Inc*, 77 F Supp 2d 816, 820, n 12 (ED Mich, 1999). A court can enjoin actual or threatened misappropriation of a trade secret and can also compel affirmative acts necessary to protect a trade secret. MCL 445.1903(1), (3); *Merrill Lynch, Pierce, Fenner & Smith, Inc v Ran*, 67 F Supp 2d 764, 775 (ED Mich, 1999); *Ford Motor Co v Lane*, 67 F Supp 2d 745, 749-750 (ED Mich, 1999). Misappropriation includes the disclosure or use of a trade secret without consent. MCL 445.1902(b)(ii); *Sherman & Co v Salton Maxim Housewares, Inc*, 94 F Supp 2d 817, 821-822 (ED Mich, 2000).

Rather than arguing actual misappropriation, CMI relies on the theory of inevitable disclosure. In *PepsiCo, Inc v Redmond*, 54 F3d 1262, 1269 (CA 7, 1995), the Seventh Circuit Court of Appeals addressed this theory. In that case, the plaintiff sought a preliminary injunction against another company and its employee

to prevent its employee, a former employee of plaintiff who had signed a confidentiality agreement, from divulging plaintiff's trade secrets and confidential information and from assuming specific duties. *Id.* at 1263, 1264. A statute in Illinois that is similar to Michigan's UTSA "provides that a court may enjoin the 'actual or threatened misappropriation' of a trade secret." *Id.* at 1267. The Seventh Circuit Court of Appeals explained that "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *Id.* at 1269. The Seventh Circuit Court of Appeals affirmed the district court's grant of a preliminary injunction, finding that the plaintiff established a sufficient likelihood of success despite the lack of evidence that the defendant had used or planned to use any trade secrets. *Id.* at 1271. However, the employee in *PepsiCo* demonstrated a lack of trustworthiness beyond his decision to work for a competitor.[1] *Id.* at 1270.

No Michigan case has interpreted the statutory provision concerning threatened misappropriation, MCL 445.1903. Even assuming that the concept of "threatened misappropriation" of trade secrets encompasses a concept of inevitable disclosure, that concept must not compromise the right of employees

---

[1] The Seventh Circuit Court of Appeals noted:

> The facts of the case do not ineluctably dictate the district court's conclusion. [The employee's] ambiguous behavior toward his PepsiCo superiors might have been nothing more than an attempt to gain leverage in employment negotiations. . . . Nonetheless, the district court, after listening to the witnesses, determined otherwise. That conclusion was not an abuse of discretion. [*PepsiCo, supra* at 1271.]

to change jobs. See *Hayes-Albion Corp v Kuberski*, 421 Mich 170, 188; 364 NW2d 609 (1984). Accordingly, we hold that for a party to make a claim of threatened misappropriation, whether under a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets. See *PepsiCo, supra*; *FMC Corp v Cyprus Foote Mineral Co*, 899 F Supp 1477, 1482-1483 (WD NC, 1995). Here, CMI offered no evidence of duplicity by Ruff or Intermet beyond the employment of Ruff and failed to even suggest a specific trade secret that defendants were likely to misappropriate. CMI argues that it should not be required to reveal in court the trade secrets it seeks to protect. However, MCL 445.1906 specifically provides several means by which a court can preserve the secrecy of alleged trade secrets, including protective orders, in camera hearings, and closed records. Further, there is no reason to believe that Intermet did not have expertise comparable to that of CMI at the time that Intermet hired Ruff. Consequently, CMI cannot establish a basis on which to claim inevitable disclosure. Thus, no preliminary injunction was warranted and summary disposition was appropriate.

CMI also argues that summary disposition was premature because discovery had not been completed and CMI had not had the opportunity to depose Ruff and other Intermet employees. Although it is usually inappropriate for a circuit court to grant summary disposition before the parties complete discovery, *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000); *Bellows v Delaware McDonald's*

*Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994), summary disposition is not premature if there is no fair chance that further discovery will allow the party opposing the motion to present sufficient support for its allegations. *Grable, supra* at 566; *Northland Wheels Roller Skating Center, Inc v Detroit Free Press, Inc*, 213 Mich App 317, 329-330; 539 NW2d 774 (1995).

Here, CMI failed to explain how further discovery would rescue its breach of contract claim. With regard to the misappropriation claims, theoretically defendants could admit actual misappropriation or other duplicity supporting plaintiff's fear of misappropriation. However, plaintiff failed to demonstrate a fair chance that this would occur. Thus, the trial court did not err in granting summary disposition before the close of discovery.

Affirmed.