NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0348n.06

No. 19-2051

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 12, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RGIS, LLC, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| KEITH GERDES, | ) ) | |
| Defendant-Appellant. | ) ) | |

Before: GILMAN, KETHLEDGE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. RGIS, LLC, a company headquartered in Michigan, offers a variety of inventory-related services to business customers around the world. Keith Gerdes worked for RGIS from California for 30 years, eventually becoming a regional vice president on the operations side of the company. Gerdes left RGIS in May 2019. An RGIS official said that Gerdes told the company that he was resigning to allow for more "personal time." But Gerdes immediately accepted the position of Vice President of U.S. Operations with one of RGIS's main competitors. RGIS did not take kindly to this development because Gerdes's employment agreement barred him from accepting a job with a competitor for one year after leaving RGIS and required him to keep confidential certain RGIS business information. RGIS also believed that Gerdes failed to return a company laptop.

In June 2019, RGIS sued Gerdes in a Michigan district court for breaching the employment agreement and misappropriating trade secrets. RGIS also filed a motion for a preliminary injunction; Gerdes responded with a motion to dismiss for lack of personal jurisdiction and a motion to delay the injunction proceedings until after a decision on the motion to dismiss. Gerdes never formally responded to the motion for a preliminary injunction. At a hearing the court denied Gerdes's requested delay, and Gerdes then characterized his motion to dismiss as an opposition to the preliminary-injunction motion. The court granted the preliminary injunction. The injunction barred Gerdes from working at the competitor until a year after he left RGIS, required Gerdes to return any property that belonged to RGIS, and prohibited Gerdes from disclosing any RGIS trade secrets. *RGIS, LLC v. Gerdes*, 2019 WL 3958392, at *8 (E.D. Mich. Aug. 21, 2019).

Gerdes now raises three arguments on appeal. Each argument fails, so we affirm.

Courts consider four familiar factors when deciding whether to grant a preliminary injunction: (1) whether the plaintiff is likely to succeed on the merits; (2) whether the plaintiff will suffer irreparable harm; (3) whether the balance of the equities tips in the plaintiff's favor; and (4) whether an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). On appeal, we review de novo the district court's conclusion on the first factor, but we review under the abuse-of-discretion standard the district court's ultimate decision about whether the preliminary-injunction factors favor granting or denying an injunction. *Babler v. Futhey*, 618 F.3d 514, 519–20 (6th Cir. 2010); *see D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019); *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 305 (6th Cir. 2019).

1. *Motion Procedure*. Gerdes argues that the district court abused its discretion by ruling on RGIS's preliminary-injunction motion without giving him an opportunity to respond. We see no error, let alone an abuse of discretion. To begin with, Gerdes did have an opportunity to

respond; he simply failed to take it. RGIS filed its motion on July 1, 2019, and the court quickly set a hearing for August 14. Local rules gave Gerdes 21 days to respond. E. Dist. of Mich. L.R. 7.1(e)(1)(B). Gerdes filed nothing until July 29, the date on which he moved to dismiss for lack of personal jurisdiction. And he did not file his motion to delay ruling on the preliminary-injunction motion until August 8. In addition, the district court could look at Gerdes's requested delay with a skeptical eye. He was simultaneously working for RGIS's competitor in what RGIS believed to be a clear breach of contract and so had every incentive to avoid an injunction ruling. Not only that, Gerdes told the district court at the hearing that his motion to dismiss was "actually" an opposition to the motion for a preliminary injunction. All told, the court gave Gerdes enough time to respond, had good reason not to delay things further, and went out of its way to allow Gerdes to use his motion-to-dismiss arguments to oppose the injunction. It committed no procedural error. *See Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 593–95 (7th Cir. 2012); *cf. Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 766–67 (6th Cir. 2019).

2. *Personal Jurisdiction*. Gerdes, a Californian, next argues that the Michigan district court should have denied the injunction for one overarching reason—that RGIS does not have a likelihood of success because the district court lacks personal jurisdiction over him. Yet RGIS showed that it would likely rebut this personal-jurisdiction defense based on a waiver in the parties' employment agreement. *Cf. Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982). Although Gerdes does not live in Michigan, he signed an agreement with a forum-selection clause stating that any dispute arising from that agreement "shall and must be filed in" a state or federal court in Michigan. *RGIS*, 2019 WL 3958392, at *3. By signing this agreement, Gerdes consented to litigating in the district court and likely waived his right to challenge the district court's personal jurisdiction over him. *See Stone Surgical, LLC v. Stryker*

*Corp.*, 858 F.3d 383, 388–89 (6th Cir. 2017); *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). Gerdes's personal-jurisdiction defense thus provides no basis for overturning the preliminary injunction.

3. *RGIS's Substantive Claims.* Gerdes lastly argues that the district court wrongly granted an injunction based on RGIS's breach-of-contract and misappropriation-of-trade-secrets claims. We disagree on both fronts.

Gerdes initially asserts that Michigan courts would not enforce his employment agreement's noncompete provision because it is overbroad. But the passage of time has made it unnecessary for us to resolve this state-law contract question. The part of the preliminary injunction enforcing Gerdes's one-year noncompete expired by its own terms in May 2020, one year after Gerdes left RGIS. Because that part of the injunction no longer applies, we "have no way to grant [the requested] relief[.]" *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 395–96 (6th Cir. 2020) (per curiam). Gerdes's challenge to this part of the injunction is thus moot. *Id.*; *see also Hodges v. Schlinkert Sports Assocs., Inc.*, 89 F.3d 310, 312 (6th Cir. 1996).

Gerdes next asserts that the district court mistakenly granted an injunction prohibiting him from misappropriating RGIS's trade secrets. The district court did not abuse its discretion in granting this part of the injunction. We start with the "all-important likelihood-of-success" factor, a factor that we review de novo. *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849, 854 (6th Cir. 2017).

RGIS brought claims under both federal and state law. The Michigan Uniform Trade Secrets Act permits courts to enjoin the "[a]ctual or threatened misappropriation" of a trade secret. Mich. Comp. Laws § 445.1903(1). The Act defines "misappropriation" to include the "[d]isclosure or use of a trade secret of another without express or implied consent by a person

who" "knew or had reason to know that his or her knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]" *Id.* § 445.1902(b)(ii)(B). And the Act defines "trade secret" to mean "information" that derives economic value from being kept secret and that is subject to reasonable efforts to keep it secret. *Id.* § 445.1902(d). In the Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat. 376, Congress also authorized trade-secret owners to seek injunctions against actual or threatened misappropriation of trade secrets for products or services in interstate commerce. 18 U.S.C. § 1836(b)(1), (3)(A). This federal law defines "misappropriation" and "trade secret" in similar ways. *Id.* § 1839(3), (5)(B)(ii)(III).

Here, the district court viewed "the elements of misappropriation under" federal law as "substantially similar" to the elements of misappropriation under state law, so it "addresse[d] them together." *RGIS*, 2019 WL 3958392, at *5 n.3. Likewise, the parties on appeal treat the federal claim as adopting legal standards that are coextensive with the standards that Michigan courts have adopted for the state claim. For purposes of this appeal, therefore, we will follow the parties' lead and simply assume (without deciding) that the federal law follows the same standards as the state law. *Cf. Compulife Software Inc. v. Newman*, __ F.3d __, 2020 WL 2549505, at *13 n.13 (11th Cir. May 20, 2020).

RGIS showed a likelihood of success that it could satisfy both the "trade secret" and the "misappropriation" elements of these claims. Courts have found that these elements raise fact questions reviewed under the clear-error standard. *See, e.g.*, *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278–79 (3d Cir. 2019); *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 30–31 (6th Cir. 2011).

Gerdes does not appear to dispute the "trade secret" element. Declarations from senior RGIS officials explained that Gerdes knew much of the company's confidential "business information," *see* 18 U.S.C. § 1839(3); Mich. Comp. Laws § 445.1902(d), including its "strategic future planning, [its] plans for future use of software and [artificial intelligence], [its] customer service levels, [its] recruitment strategy, [its] business development strategy, its regional pricing strategy, and its margins." The declarations added that RGIS had taken reasonable measures to keep this business information secret (such as by requiring its employees, including Gerdes, to sign confidentiality agreements) and that this information derived independent value from not being generally known. *See* 18 U.S.C. § 1839(3); Mich. Comp. Laws § 445.1902(d). With no contrary evidence from Gerdes, the district court did not clearly err in finding that this information likely qualifies as a "trade secret" under the broad legal definitions in federal and Michigan law. *RGIS*, 2019 WL 3958392, at *6; *see also, e.g.*, *Par Pharm.*, 764 F. App'x at 278–79.

The district court also did not clearly err when it found that RGIS had shown that Gerdes likely would "misappropriate" RGIS's trade secrets. *See Brake Parts*, 443 F. App'x at 30–31; *Par Pharm.*, 764 F. App'x at 279. Under Michigan law—which, again, we treat as coextensive with federal law for this case—a party seeking an injunction based on a former employee's "threatened misappropriation" of trade secrets "must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets." *Actuator Specialties, Inc. v. Chinavare*, 2011 WL 6004068, at *3 (Mich. Ct. App. Dec. 1, 2011) (per curiam) (quoting *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 813 (Mich. Ct. App. 2002) (per curiam)). Yet additional proof that the former employee showed a "lack of trustworthiness beyond his decision to work for a competitor," including his deception of the former employer about accepting a position with the competitor, can support a conclusion that

the employee cannot be "trusted" to keep trade secrets confidential. *Actuator Specialties*, 2011 WL 6004068, at *3 (quoting *CMI Int'l*, 649 N.W.2d at 813; *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995)).

Here, RGIS identified specific pieces of business information that qualify as trade secrets, and presented enough evidence to support a finding that Gerdes showed a "lack of trustworthiness beyond" merely deciding to work for a competitor. *Actuator Specialties*, 2011 WL 6004068, at *4. To begin with, the district court could conclude that Gerdes was deceptive about his reasons for leaving RGIS. According to a declaration from an RGIS official, Gerdes told the company that he needed more "personal time and that he was not sure what he was going to do next." Yet he immediately went to work for a "direct competitor." In addition, Gerdes allegedly failed to return "at least a Surface Pro laptop device that was provided to him by RGIS," as he was required to do by his employment agreement after resigning his position. And, as the district court also noted, Gerdes did not present any arguments to counter these points. *RGIS*, 2019 WL 3958392, at *6. The district court thus did not clearly err when finding that RGIS would likely be able to prove that Gerdes would misappropriate RGIS's trade secrets under federal and Michigan law.

Lastly, the district court did not abuse its discretion in finding that the remaining preliminary-injunction factors weighed in favor of the injunction. On irreparable harm, the district court noted that a harm may qualify as irreparable—that is, "not fully compensable by money damages"—"if the nature of the plaintiff's loss would make damages difficult to calculate." *RGIS*, 2019 WL 3958392, at *7 (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1991)). Most relevant to this part of the injunction, the court found that any disclosure of RGIS's trade secrets would harm its "ability to compete with its competitors." *Id.* We have previously upheld similar findings of irreparable harm. *See, e.g.*, *Brake Parts*, 443 F. App'x at 32; *Basicomputer*

7

*Corp.*, 973 F.2d at 512. Gerdes also does not dispute the district court's findings about the other two preliminary-injunction factors, so he has forfeited any challenge to them. *See, e.g.*, *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000).

In sum, the district court did not abuse its discretion by granting a preliminary injunction on this record. We affirm.