*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOPE NETWORK REHABILITATION
SERVICES,

　　　　　Plaintiff-Appellee,

v

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

　　　　　Defendant-Appellant,

and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

　　　　　Defendant.

UNPUBLISHED
June 9, 2022

No. 355372
Ingham Circuit Court
LC No. 19-000167-NF

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant-appellant, the Michigan Catastrophic Claims Association (MCCA), appeals by leave granted[1] the opinion and order denying its motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim). Plaintiff, Hope Network Rehabilitation Services (Hope), originally brought this lawsuit against defendant Farm Bureau General Insurance Company of Michigan (Farm Bureau) in pursuit of no-fault benefits under the no-fault act, MCL 500.3101 *et seq*., pursuant to an assignment by Marilyn Koyl, the recipient of the medical services provided by Hope. The trial court subsequently granted leave for Hope to amend its complaint to add a claim of tortious interference with a business relationship or expectancy against the MCCA for its alleged interference in Hope's attempt to obtain payment for the benefits at issue after Hope filed this

---

[1] *Hope Network Rehab Servs v Mich Catastrophic Claims Ass'n*, unpublished order of the Court of Appeals, entered March 29, 2021 (Docket No. 355372).

lawsuit against Farm Bureau. For the reasons discussed below, we reverse the trial court order denying the MCCA summary disposition, and remand to the trial court for entry of an order granting summary disposition in the MCCA's favor.

## I. FACTS AND PROCEDURAL HISTORY

On January 13, 2018, Koyl suffered serious injuries in a motor vehicle accident, including a traumatic brain injury. Koyl had personal injury protection (PIP) benefits under a no-fault policy issued by Farm Bureau. Hope provided services for Koyl's care, recovery, or rehabilitation related to her accident-related injuries. Despite months of negotiation between Hope and Farm Bureau, they could not reach an agreement with respect to the claim for all of the allowable and reasonable expenses incurred by Koyl for the reasonably necessary products, services, and accommodations rendered to her between March 5, 2018, and October 2, 2018.

On March 14, 2019, Hope filed an initial complaint against Farm Bureau seeking payment of the expenses. Nearly a year later, the trial court granted leave for Hope to amend its complaint to add a claim of tortious interference of business relationship or expectancy against the MCCA for its alleged interference with Hope's attempt to obtain payment from Farm Bureau after filing its initial complaint. Hope alleged that, "upon information and belief," the MCCA had refused to approve payment by Farm Bureau or threatened to withhold reimbursement to Farm Bureau for all or some of Hope's charges and, by doing so, the MCCA intentionally interfered with Hope's business relationship or expectancy that Farm Bureau would pay the reasonable charges incurred for Koyl's reasonably necessary medical services. Hope alleged that it suffered damages as a result of the MCCA's intentional interference, "including, but not limited to, the costs of prosecuting the instant lawsuit."

The MCCA moved to dismiss the tortious interference claim under MCR 2.116(C)(8). The MCCA maintained that Hope and Farm Bureau were in a dispute over the reasonableness of Hope's charges and that if the parties could not agree as to what was reasonable, the issue would be decided by a jury, and the MCCA would reimburse Farm Bureau for whatever amount it was statutorily obligated to pay in light of the jury's verdict. Hope would receive what it was entitled to receive under the no-fault act and, therefore, it had no damages flowing from any claim against the MCCA. The MCCA additionally argued that Hope had not alleged that the MCCA's conduct was somehow improper, and that even if Hope had alleged improper interference, Hope had not pleaded any facts sufficient to demonstrate illegal, unethical, or fraudulent conduct by the MCCA. The MCCA did not dispute that it was obligated to pay amounts over the statutory threshold, but argued that the Legislature had given the MCCA the ability to be involved in settlement negotiations by requiring that proposed settlements be sent to the MCCA for preapproval.

Hope argued that the allegation that the MCCA interfered by refusing to approve payment by Farm Bureau or threatening to withhold reimbursement to Farm Bureau was sufficient to allege that the MCCA did something illegal, unethical, or fraudulent. Hope also argued that the damages

suffered as a result of the MCCA's alleged intentional interference were "delay" and the "costs to prosecute this lawsuit."[2]

The trial court found that Hope had met its burden of stating a cause of action, and therefore denied the MCCA's motion to dismiss. In a written order, the trial court acknowledged that the MCCA was authorized to involve itself in settlement between Hope and Farm Bureau, but said:

> Still, clearly any improper, unethical, illegal, or fraudulent acts in connection with the matter would be outside the scope of MCCA's authority, and could show an improper motive. In this context, it is possible to conceive of factual scenarios that could justify recovery. Plaintiff alleges MCCA threatened to withhold reimbursement to the insurer, which tends to run counter to its statutory mandate. Depending on what conduct occurred and what specific threat may or may not have been made, and many other facts, there is a conceivable path by which Plaintiff could prove its claim. This is sufficient to foreclose summary disposition under MCR 2.116(C)(8).

The MCCA moved for reconsideration, arguing, in part, that the trial court erred by focusing on what discovery and trial might reveal, instead of focusing on the allegations in the complaint. The MCCA argued that the complaint did not allege facts sufficient to show improper conduct by the MCCA. The MCCA also reiterated its argument that there were no facts under which Hope would be entitled to recover damages from the MCCA because, ultimately, Hope would receive what it was entitled to receive under the no-fault act. In response to the MCCA's motion, Hope argued that its damages would be the costs of prosecuting this lawsuit, the expenditure of time by Hope's representatives and employees, and the loss of use of the funds that Hope should have had sooner were it not for the MCCA's interference. The trial court denied the motion, stating in part in its order that the issue of resultant damages had been adequately addressed in Hope's briefs.

## II. ANALYSIS

The MCCA argues that the trial court erred by denying its motion for summary disposition because Hope's complaint failed to sufficiently plead the third and fourth elements of a claim for tortious interference with a business relationship or expectancy.

## A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(8) tests the factual sufficiency of the complaint based on the pleadings alone; all

---

[2] Farm Bureau's counsel said that Farm Bureau's position "since the beginning" was that it was obligated to pay "what is reasonable and what is supported by reasonable proof." It agreed with the MCCA that the "end result" of what Hope was entitled to would be the same whether or not the MCCA was a party in the case.

well-pleaded factual allegations are accepted as true and are construed in a light most favorable to the nonmoving party. *Kazor v Dep't of Licensing & Regulatory Affairs, Bureau of Prof Licensing*, 327 Mich App 420, 422; 934 NW2d 54 (2019). Judgment is properly granted under MCR 2.116(C)(8) when the claims are clearly unenforceable as a matter of law and no factual development could possibly justify recovery. *Id*.

## B. PIP BENEFITS

MCL 500.3105(1) makes a no-fault insurer liable for the payment of PIP benefits. MCL 500.3105(1) states that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3107 provides that "personal protection insurance benefits are payable for" certain costs, including "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," MCL 500.3107(1)(a), and "[w]ork loss consisting of loss of income from work," MCL 500.3107(1)(b).

## C. THE MCCA

"The MCCA is an unincorporated nonprofit association, whose purpose is to provide insurers with indemnification for PIP policies that exceed a certain threshold." *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 18; 795 NW2d 101 (2009). See MCL 500.3104(1). In *USF&G*, 484 Mich at 6, our Supreme Court held that

> the indemnification obligation set forth in MCL 500.3104(2) does not incorporate the reasonableness standard that MCL 500.3107 requires between claimants and member insurers. Furthermore, the powers granted to the MCCA in § 3104(7) are limited to adjusting the "practices and procedures" of the member insurers and do not encompass adjustment to the payment amount agreed to between claimants and member insurers. Moreover, we hold that the power granted to the MCCA under MCL 500.3104(8)(g) is limited to furthering the purposes of the MCCA and that determining reasonableness is not one of its purposes. Finally, although the MCCA has no right to directly challenge the reasonableness of a claim, the no-fault statute does provide the MCCA with safeguards against negligent actions of member insurers.

The Legislature specifically laid out the powers that the MCCA can exercise to guard against unreasonable settlements of catastrophic claims. MCL 500.3104(7)(b) states that the MCCA shall

> [e]stablish procedures by which members must promptly report to the association each claim that, on the basis of the injuries or damages sustained, may reasonably be anticipated to involve the association if the member is ultimately held legally liable for the injuries or damages. Solely for the purpose of reporting claims, the member shall in all instances consider itself legally liable for the injuries or

damages. The member shall also advise the association of subsequent developments likely to materially affect the interest of the association in the claim.

The *USF&G* Court said:

> This statutory language requires and empowers the MCCA to establish procedures to protect itself from unreasonable settlements in all cases involving claims that may exceed the threshold and consequently affect the MCCA. The MCCA's plan of operation likewise echoes these statutory requirements. This language enables the MCCA to establish procedures that will enable it to exercise appropriate control over settlements whenever the member reasonably anticipates that the claim will involve the MCCA. [*USF&G*, 484 Mich at 20 (footnote omitted).]

"Only then, not after the claimant and member insurer have reached a settlement, can the MCCA exercise control over the settlement process." *Id*. at 20-21. "The MCCA has the power to step in before a settlement has been reached and adjust situations that it anticipates might otherwise expose it to unreasonable indemnification costs. By requiring submission of proposed settlement agreements for approval, the MCCA can protect itself against later having to pay unreasonable claims from member insurers. The exercise of these powers is the MCCA's protection against a member's neglect of its duties." *Id*. at 22.

## D. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

To succeed on a claim of tortious interference with a business relationship or expectancy, a plaintiff must establish the following elements: (1) "the existence of a valid business relationship or expectancy," (2) "knowledge of the relationship or expectancy on the part of the defendant," (3) "an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy," and (4) "resultant damage to the plaintiff." *Cedroni Ass'n, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012), quoting *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 323; 788 NW2d 679 (2010) (quotation marks omitted). The MCCA contends that the third and fourth elements of the claim were lacking in the complaint.

With respect to the third element, interference alone will not support a claim under this theory. "[T]o satisfy the third element, the plaintiff must establish that the defendant acted both intentionally and either improperly or without justification." *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 78; 919 NW2d 439 (2018) (quotation marks and citation omitted). A tortious interference with a business relationship claim requires an allegation "of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or the business relationship of another." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002) (quotation marks and citation omitted). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id*. "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Dalley*, 287 Mich App at 324 (quotation marks and citation omitted). Thus, if a defendant's actions were motivated by a legitimate business reason, those actions do not constitute

improper motive or interference, and they cannot be wrongful per se. *Badiee v Brighton Area Sch*, 265 Mich App 343, 366; 695 NW2d 521 (2005). "If the defendant's conduct is not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.* at 367 (quotation marks and citation omitted).

In this case, the sole conduct alleged was that the MCCA had either withheld or threatened to withhold reimbursement to Farm Bureau,[3] and that by doing so the MCCA intentionally interfered with Hope's business relationship and/or expectancy with Farm Bureau, inducing, causing, or contributing to a breach of that relationship or expectancy. Hope's alleged business expectancy was that "its reasonable charges for the reasonably necessary services, products and/or accommodations that it provided to Marilyn Koyl for her care, recovery, or rehabilitation from her accident-related injuries would be covered and, ultimately, paid for by Defendant Farm Bureau." Hope's act of filing a complaint against Farm Bureau for its alleged refusal to pay demonstrated that Hope and Farm Bureau were unable to reach an agreement with respect to whether the expenses were reasonable and necessary, and that it would be up to a jury to resolve the issue. See *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990) (stating that "whether expenses are reasonable and reasonably necessary is generally one of fact for the jury"). Hope acknowledged, when moving to amend its complaint to add the tortious interference claim against the MCCA, that it had been attempting to resolve the dispute with Farm Bureau "for months," and that the MCCA's alleged interference did not begin until after Hope filed this lawsuit against Farm Bureau. Even accepting the factual allegations in the complaint as true, Hope did not allege that the MCCA committed an inherently wrongful act, and Hope failed to allege, with any degree of specificity, affirmative acts that the MCCA committed with the motive of interfering with Hope's business relationship or expectancy. Hope simply stated in its complaint that the MCCA refused to approve payment and/or threatened to withhold reimbursement to Farm Bureau and that these acts interfered with Hope's business relationship with Farm Bureau. The MCCA's alleged involvement with Farm Bureau with respect to Hope's claim, which was not supported by specific facts, was not so inherently wrongful that it could never be justified given the MCCA's power to step in before a settlement has been reached and adjust situations that it anticipates might otherwise expose it to unreasonable indemnification costs. See *Badiee*, 265 Mich App at 367. Therefore, Hope was required to allege in its complaint specific and affirmative acts that the MCCA intentionally committed in order to interfere with Hope's business relations or expectancy. See *CMI Int'l, Inc*, 251 Mich App at 131. Because Hope failed to make any specific allegations to demonstrate acts of unlawful interference, the trial court erred by failing to grant summary disposition on Hope's tortious interference claim under MCR 2.116(C)(8).

With respect to the fourth element, a plaintiff pleading a claim of tortious interference with a business relationship or expectancy must show that, as a result of the interference, the plaintiff has suffered damages. *Dalley*, 287 Mich App at 323. The "business expectancy" that Hope alleged to be interfered with was the payment of no-fault benefits for reasonable and necessary PIP expenses. The benefits were not paid, at least initially, because Farm Bureau disputed them. The MCCA had nothing to do with that decision. A jury will determine whether the expenses

---

[3] The reimbursement would depend on the outcome of the underlying dispute between Hope and Farm Bureau.

were reasonable and necessary. *Nasser*, 435 Mich at 55. Farm Bureau will be liable for the benefits that are legitimately due as determined by the jury. The MCCA, in turn, will be required to indemnify Farm Bureau "for 100% of the amount of ultimate loss sustained under personal protection insurance coverages in excess of" the applicable statutory threshold. MCL 500.3104(2). Thus, as a matter of law, Hope will receive 100 percent of the expenses that a jury concludes to be reasonable and reasonably necessary and, therefore, Hope would have no resultant damages as a result of the MCCA's alleged interference.

In its complaint, Hope simply alleged that its damages were "including, but not limited to, the costs of prosecuting the instant lawsuit." Attorney fees incurred in litigating a matter do not constitute "damages" unless a statute or court rule explicitly provides otherwise. See *Phinney v Perlmutter*, 222 Mich App 513, 560; 564 NW2d 532 (1997), impliedly overruled on other grounds by *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 290; 696 NW2d 646, amended 473 Mich 1205 (2005) (stating that "[a]wards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception"); see also *Cooley v Mid-Century Ins Co*, 52 Mich App 612, 617; 218 NW2d 103 (1974) (explaining that "[a]s a general rule, our courts have refused to allow recovery of attorneys' fees, either as an element of the costs of the suit or as an item of damages, unless allowance of a fee is expressly authorized by statute or court rule.") (quotation marks and citation omitted). A prevailing party recovers litigation costs and attorney fees not by claiming them as damages, but by persuading the trial court that one of the recognized exceptions justifies an award of such costs and fees. Because plaintiff's complaint failed to sufficiently plead the element of resultant damages, summary disposition under MCR 2.116(C)(8) was warranted for this reason as well.

If a motion for summary disposition is based on MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). "The amendment of a pleading is properly deemed futile when, regardless of the substantive merits of the proposed amended pleading, the amendment is legally insufficient on its face." *Kostadinovski v Harrington*, 321 Mich App 736, 743-744; 909 NW2d 907 (2017). At the hearing on the MCCA's motion to dismiss, Hope cited the additional "delay" in the payment of no-fault benefits[4] and "additional fees" and interest, as well as the costs of litigation, as damages. On the basis of the above analysis regarding resultant damages, we conclude as a matter of law that amendment of the complaint would be futile because Hope could not sufficiently allege resultant damages as a result of any alleged improper interference.

Reversed and remanded for entry of an order granting summary disposition under MCR 2.116(C)(8) in favor of the MCCA. We do not retain jurisdiction. As the prevailing party, the MCCA may tax costs. MCR 7.219(A).

---

[4] A claimant can seek penalty interest, MCL 500.3142, and attorney fees, MCL 500.3148, for an insurer's delay in paying no-fault benefits.

-8-

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Christopher M. Murray