*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AS, by Guardian KATHLEEN LANE,

        Plaintiff-Appellee,

v

TITAN INSURANCE COMPANY,

        Defendant,

and

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

        Defendant-Appellant.

UNPUBLISHED
February 29, 2024

No. 363796
Oakland Circuit Court
LC No. 2022-193633-NF

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Plaintiff, AS, by guardian Kathleen Lane, filed a complaint that included a claim against the Michigan Catastrophic Claims Association (MCCA) for tortious interference with an insurance contract between plaintiff and his automobile insurer, Titan Insurance Company (Titan). Plaintiff alleged that he suffered financial injury when the MCCA denied preapproval of payments by Titan to plaintiff. The MCCA unsuccessfully sought summary disposition under MCR 2.116(C)(8) on that claim and then brought this appeal by leave granted.[1] Based on decisions from this Court, we reverse the trial court's order denying summary disposition to the MCCA and remand for entry of an order awarding summary disposition to the MCCA under MCR 2.116(C)(8).

---

[1] *Lane v Titan Ins Co*, unpublished order of the Court of Appeals, entered April 19, 2023 (Docket No. 363796).

-1-

# I. FACTUAL BACKGROUND

In 2001, plaintiff was involved in a motor vehicle collision and sustained a traumatic brain injury. Plaintiff has since required 24-hour care. At the time of the collision, plaintiff was insured by Titan, which was responsible for covering plaintiff's claim for the payment of no-fault benefits. Since 2008, Titan has been paying for plaintiff's attendant-care benefits (ACBs) at a rate of $600 per day based on payment at $25 per hour, and the MCCA has reimbursed Titan for the payments. But on July 2, 2021, when amended provisions of the no-fault act became operative, Titan started paying a lower amount based upon the amended no-fault act when the MCCA made clear it would only preapprove payments of $14.32 per hour, using the formula legislatively dictated under MCL 500.3157.

Plaintiff filed suit, pleading claims against Titan for violating the no-fault act and breaching the automobile-insurance contract by reducing the hourly rate for his attendant care. Additionally, plaintiff brought a claim against the MCCA for tortious interference with the automobile-insurance contract between plaintiff and Titan. Specifically, plaintiff alleged that the MCCA required Titan to obtain preapproval of the amounts Titan determined were reasonable payments of benefits for plaintiff or face the possibility that the MCCA would refuse to reimburse Titan for the full amount of benefit payments. By denying preapproval to Titan, the MCCA effectively compelled Titan to choose between breaching its automobile-insurance contract with plaintiff or engaging in lengthy, expensive litigation with the MCCA, risking millions of dollars if the MCCA did not reimburse Titan. Plaintiff stated that the MCCA engaged in these intentional, wrongful acts with malice and for the specific purpose of causing Titan to breach its contractual obligations to plaintiff by paying ACBs at the reduced hourly rate of $14.32 instead of the traditional hourly rate of $25.

The MCCA moved for summary disposition under MCR 2.116(C)(8), arguing plaintiff's claim for tortious interference should be dismissed because the claim rested on legally authorized actions taken by the MCCA, rather than on tortious or otherwise wrongful acts. Also, the MCCA noted that plaintiff failed to allege that the MCCA's interpretation of relevant caselaw to set the hourly rate at $14.32 was undertaken with malice or without legal justification. Beyond that, the MCCA characterized its actions as motivated by legitimate business reasons, and thus not tortious. The MCCA was just protecting itself from unreasonable settlements in establishing its preapproval policy. Finally, the MCCA contended that plaintiff's claim for tortious interference failed because plaintiff suffered no damages from the alleged interference. Although he received less than $600 per day for ACBs, none of plaintiff's caregivers stopped furnishing care to plaintiff because of the decreased payments for ACBs.

In response, plaintiff pointed out that the MCCA's argument in its motion for summary disposition rested upon the assertion that its conduct was authorized by law, not that plaintiff failed to state a claim on which relief could be granted. Accordingly, plaintiff contended that the MCCA failed to confine its argument to the basis for summary disposition identified in MCR 2.116(C)(8). Plaintiff asserted that the MCCA's unlawful interference caused Titan to breach its contract with plaintiff by unilaterally picking a decreased, unreasonably low rate of payment for ACBs despite Titan's initial conclusion that $600 per day was a reasonable rate for ACBs. Furthermore, plaintiff argued that the MCCA's interference caused damages in the amount of the difference between the $25-per-hour rate that plaintiff originally received for ACBs and the $14.32-per-hour rate plaintiff

received after the MCCA caused Titan to reduce the hourly rate to $14.32. Accordingly, plaintiff argued that summary disposition under MCR 2.116(C)(8) was inappropriate because the complaint alleged each element of tortious interference with the contract between plaintiff and Titan.

On September 28, 2022, the trial court issued a written opinion and order denying summary disposition to the MCCA under MCR 2.116(C)(8). The trial court determined that the complaint alleged each element of a claim for tortious interference with a contract and concluded that factual development could justify recovery on plaintiff's claim, so the trial court found no basis to award summary disposition to the MCCA under MCR 2.116(C)(8). The trial court subsequently denied the MCCA's motion for reconsideration, and then the MCCA obtained leave to appeal.

## II. LEGAL ANALYSIS

The MCCA faults the trial court for denying its motion for summary disposition pursuant to MCR 2.116(C)(8). This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(8). *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. Additionally, "[a] motion under MCR 2.116(C)(8) may only be granted when the claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. Thus, we must focus exclusively on plaintiff's complaint to determine whether the MCCA is entitled to summary disposition under MCR 2.116(C)(8). Accordingly, "[w]hile the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot" be fatal. *Id*. at 162.

Plaintiff's challenged claim rests on the theory of tortious interference with the automobile-insurance contract between plaintiff and his insurer, Titan. "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005). "By definition, tortious interference with a contract is an intentional tort[,]" *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013), so a plaintiff who pleads tortious interference with a contract "must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights" of the plaintiff. *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002). Under Michigan law, " '[a] wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances.' " *Badiee v Brighton Area Sch*, 265 Mich App 343, 367; 695 NW2d 521 (2005). If the defendant's conduct was not wrongful per se, then the plaintiff must plead "specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI*, 251 Mich App at 131. Hence, to survive the MCCA's motion for summary disposition under MCR 2.116(C)(8), plaintiff had to plead each of those three elements. See *El-Khalil*, 504 Mich at 160-162.

A proper view of plaintiff's claim against the MCCA requires a basic understanding of the role that the MCCA plays in the payment of personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq*. Pursuant to MCL 500.3105(1), a no-fault insurer is liable for

PIP benefits "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." PIP benefits are payable under MCL 500.3107 for certain costs, including "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation[.]" The ACBs for which Titan paid fall into the category of allowable expenses.

As defined by MCL 500.3104, "[t]he MCCA is an unincorporated nonprofit association, whose purpose is to provide insurers with indemnification for PIP policies that exceed a certain threshold." *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 18; 795 NW2d 101 (2009) (*USF&G*). Our Legislature provided in MCL 500.3104(2) that the MCCA "would 'indemnify' the insuring members for PIP payments." *Id*. at 17. The MCCA's obligation to indemnify an insurer "arise[s] when the PIP amount contracted by the insurer exceeds the statutory threshold." *Id*. at 18. The MCCA does not have the power to directly challenge the reasonableness of a claim for PIP benefits, *id*. at 6, but our Legislature has "specifically laid out the powers that the MCCA can exercise to guard against unreasonable settlements of catastrophic claims." *Hope Network Rehabilitation Servs v Mich Catastrophic Claims Ass'n*, 342 Mich App 236, 244; 994 NW2d 873 (2022). For example, MCL 500.3104(7)(b) "empowers the MCCA to establish procedures to protect itself from unreasonable settlements in all cases involving claims that may exceed the threshold and consequently affect the MCCA." *Id*. at 245 (citation omitted). Beyond that, the MCCA has "the power to step in before a settlement has been reached and adjust situations that it anticipates might otherwise expose it to unreasonable indemnification costs." *Id*. (citation omitted). Therefore, our courts and our Legislature have anticipated that the MCCA may work with insurers to prevent exposure of the MCCA to exorbitant indemnification obligations for PIP benefits.

The 2019 reform of the no-fault act ushered in substantial reductions in some forms of PIP benefits. For example, amendments "resulted in large reductions in family-provided attendant care hours and reimbursement rates for services that are not covered by Medicare for people who had suffered traumatic injuries because of automobile accidents." *Andary v USAA Cas Ins Co*, 512 Mich 207, 214-215; 1 NW3d 186 (2023). Significantly, reform of the no-fault act included new fee schedules and attendant-care limitations that took effect on July 1, 2021. See *id*. at 248, 269. Those changes seemingly served as the impetus for the MCCA to press Titan to reduce the rate of reimbursement for plaintiff's ACBs from $25 per hour to $14.32 per hour.

Unsurprisingly, plaintiff was not the only victim of catastrophic collision-related injuries who experienced the adverse effects of the changes brought about by no-fault reform. This Court addressed claims similar to plaintiff's claim here in at least two other cases—*Hope Network*, 342 Mich App 236, and *Mapson v Farmers Ins Exch*, unpublished per curiam opinion of the Court of Appeals, issued September 14, 2023 (Docket Nos. 361240 and 362756). In *Hope Network*, this Court awarded summary disposition to the MCCA under MCR 2.116(C)(8) on a plaintiff's "claim of tortious interference with a business relationship or expectancy against the MCCA for its alleged interference in Hope's attempt to obtain payment for [PIP] benefits at issue[.]" *Hope Network*, 342 Mich App at 239. There, the MCCA "did not dispute that it was obligated to pay amounts over the statutory threshold, but it argued that the Legislature had given the MCCA the ability to be involved in settlement negotiations by requiring that proposed settlements be sent to the MCCA for preapproval." *Id*. at 241. This Court found summary disposition appropriate pursuant to MCR

2.116(C)(8) because "Hope did not allege that the MCCA committed an inherently wrongful act" and it "failed to allege, with any degree of specificity, affirmative acts that the MCCA committed with the motive of interfering with Hope's business relationship or expectancy." *Id*. at 248. Also, this Court concluded that Hope failed to plead that it suffered damages because Hope simply took the position in its complaint that it incurred attorney fees to litigate the case. *Id*. at 249.

Similarly, in *Mapson*, catastrophically injured plaintiffs filed claims against the MCCA for tortious interference with their automobile-insurance contracts, asserting that their insurer reduced the hourly rates for ACBs in 2021 and that the "MCCA acted wrongfully and with malice to cause [their insurer] to breach its agreement" with them. *Mapson*, unpub op at 2-4. This Court disagreed, explaining that the "MCCA did not engage in a 'per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' " *Id*. at 9. Rather, the "MCCA was charged with maintaining the financial soundness of the member association and was given statutory authority to establish procedures to review claims." *Id*. Beyond that, this Court noted that, "to support a claim for tortious interference with a contract, the defendant must unjustifiably instigate or induce a party to breach its contract." *Id*. Because the plaintiffs made "no contention that the preapproval process of a claim by MCCA was unjustifiably instigated or induced [the insurer] to breach its insurance contract" with either of the plaintiffs, their claim of tortious interference with their automobile-insurance contracts could not survive scrutiny under MCR 2.116(C)(8). *Id*. After all, "the Legislature authorized the MCCA to develop policies and procedures, to maintain statistical data, and to cause member insurers to report their claims to ensure the financial viability of the no-fault system." *Id*. As this Court stated in summing up its analysis, the "monitoring of the insurance members and preapproval process for claims by the MCCA failed to state a claim of tortious interference of a contract." *Id*.

Although plaintiff tries to distinguish this Court's decisions in *Hope Network* and *Mapson* from his own claim, we find plaintiff's arguments unpersuasive. To be sure, in paragraph 110 of the complaint, plaintiff lists many ways in which the MCCA purportedly engaged in "intentional per se wrongful acts and/or the doing of a lawful act with malice and unjustified in the law for the purposes of invading the contractual rights of" plaintiff. But all of those enumerated acts refer to the MCCA's actions that were authorized by our Legislature and implemented across all insurers that deal with the MCCA. No allegations relate uniquely and specifically to the MCCA's actions concerning plaintiff and his ACBs. Consequently, our concluding observation in *Mapson* applies with equal force to plaintiff's claim: "The monitoring of the insurance members and preapproval process for claims by MCCA failed to state a claim of tortious interference of a contract."[2] Thus,

---

[2] Plaintiff insists that the MCCA has flagrantly violated our Supreme Court's decision in *USF&G*, 484 Mich at 19, by "us[ing] its preapproval process as a means by which it protects itself against what it believes to be an unreasonable settlement between one of its members and its member's insured." But that argument fails to take into account the timing of the MCCA's approach, which coincided with the effective date of no-fault reforms on July 1, 2021. Operating in a new no-fault environment, the MCCA convinced this Court that the "monitoring of the insurance members and preapproval process for claims by the MCCA failed to state a claim of tortious interference of a contract." *Mapson*, unpub op at 9.

just as we decided in *Mapson*, the trial court's denial of summary disposition to the MCCA under MCR 2.116(C)(8) must be reversed and the case must be remanded to the trial court for entry of an award of summary disposition to the MCCA.[3]

Reversed and remanded for entry of summary disposition in favor of the MCCA pursuant to MCR 2.116(C)(8). We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Christopher P. Yates

---

[3] We note that the trial court did not have the benefit of our opinion in *Mapson* when it denied the MCCA's motion for summary disposition under MCR 2.116(C)(8). Although our opinion in *Hope Network* may be distinguishable from plaintiff's case in some regards, *Mapson* is directly on point, and we find its reasoning persuasive. See *Kern v Kern-Koskela*, 320 Mich App 212, 241; 905 NW2d 453 (2017) ("Although unpublished opinions are not binding precedent, MCR 7.215(C)(1), an unpublished opinion may be persuasive or instructive[.]").